## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

**IN RE:**     **DAVID GENE DOOLE**                    **CASE NO. 21-10861-JDW**
              **DBA FIBERLINK TECHNOLOGIES, LLC**

### TBK BANK, SSB'S MOTION FOR RELIEF
### FROM THE AUTOMATIC STAY AND FOR ABANDONMENT OF PROPERTY FROM
### DEBTOR'S ESTATE

TBK Bank, SSB d/b/a Triumph Commercial Finance ("TBK") files this motion for relief

from the automatic stay protecting the interests of the Debtor David Gene Doole d/b/a Fiberlink

Technologies, LLC ("Debtor") in certain property and abandonment of same from the Debtor's

estate; and in support thereof would show as follows, to-wit:

1.      This Court has jurisdiction over the subject matter herein and the parties hereto

pursuant to 28 U. S. C. § 1334, and 11 U.S.C. §362, 11 U.S.C. § 554, along with other related

statutes and rules.  This is a core proceeding as defined by 28 U. S. C. § 157(b)(2)(A) and (G).

2.      On or about August 4, 2016, the Debtor executed a Loan and Security Agreement

in the amount of $111,055.00 for the benefit of TBK ("First Loan").  To secure the indebtedness

under the First Loan, the Debtor granted TBK a security interest in certain equipment, including,

but not limited to, a Ditch Witch JT9 Directional Drill with Tracker and remote display bearing

Serial Number CMWJT9CCEG0000244 and a Ditch Witch FM5 Mud Mixer bearing Serial

Number CMWFM5XXAG0002096.  Copies of the loan documents are attached hereto and

incorporated herein by reference as Exhibit "A."

3.      On or about December 9, 2016, the Debtor executed a Loan and Security

Agreement in the amount of $47,747.14 for the benefit of TBK ("Second Loan").  To secure the

indebtedness under the Second Loan, the Debtor granted TBK a security interest in certain

equipment, including, but not limited to, a Caterpillar Mini Excavator bearing Serial Number

JWY01961.   Copies of the loan documents are attached hereto and incorporated herein by reference as Exhibit "B."

4.      On or about September 12, 2019, the Debtor executed a Loan and Security Agreement in the amount of $435,595.75 for the benefit of TBK ("Third Loan").  To secure the indebtedness under the Third Loan, the Debtor granted TBK a security interest in certain equipment, including, but not limited to, a Ditch Witch JT40 Directional Drill Jettrac bearing Serial Number DWPJT40XJH0000018 with Mud Mixer, rock bit adapter, bear claw bit, dirt nose piece, air hammer and mincon control station bearing Serial Number DDWPFM13XVK0001029.  Copies of the loan documents are attached hereto and incorporated herein by reference as Exhibit "C."

5.      The UCC Financing Statements covering the referenced equipment in the First, Second, and Third Notes ("Equipment") are attached hereto and incorporated herein by reference as Exhibit "D."

6.      On or about May 3, 2021 ("Petition Date"), the Debtor filed his voluntary petition for relief pursuant to Chapter 7, Title 11 of the United States Code.  Thereafter, William L. Fava was appointed Chapter 7 Trustee.

7.      The pertinent representatives of TBK do not have proof that the Equipment is comprehensively insured and thus, absent proof of same, TBK is not being adequately protected as contemplated by 11 U.S.C. § 362(d)(1).  Accordingly, the automatic stay, now protecting the Debtor's interest in the Equipment should lift and, furthermore, the Equipment should be abandoned from the Debtor's estate pursuant to 11 U.S.C. § 554.  Furthermore, per the Debtor's schedules, he wishes to surrender the Equipment to TBK.

8.      The provisions of Rule 4001 of the Federal Rules of Bankruptcy Procedure which would stay for fourteen (14) days the relief requested by the Movant herein should be waived or otherwise not apply.

9.      For other good and sufficient reasons to be assigned at a hearing regarding this matter.

WHEREFORE, TBK respectfully requests the entry of an order lifting the automatic stay and abandoning the Equipment from the Debtor's estate.  TBK prays for such other general and specific relief as this court may deem just.

Respectfully submitted,

TBK BANK

BY:    /s/ Rosamond H. Posey
ROSAMOND H. POSEY (MSB 101247)
Mitchell McNutt & Sams
1216 Van Buren
Post Office Box 947
Oxford, Mississippi 38655
662-234-4845

## CERTIFICATE OF SERVICE

I, Rosamond H. Posey, one of the attorneys for TBK Bank, do hereby certify that I have

served a true and correct copy of the above and foregoing Motion to the following via ECF:

David Gene Doole
152 Moore Crossing South
Byhalia, MS  38655

Robert Lomenick, Jr.
P.O. Box 417
Holly Springs, MS  38635

William L. Fava

Office of the U.S. Trustee


DATED, this the 24th day of May, 2021.


/s/ Rosamond H. Posey
Rosamond H. Posey

# LOAN AND SECURITY AGREEMENT

**THIS LOAN AND SECURITY AGREEMENT** (hereinafter referred to as the "Agreement") is entered into as of **AUGUST 4, 2016** (hereinafter referred to as the "Execution Date") by and between **TBK BANK, SSB**, a Texas State Savings Bank, having its principal place of business at 12700 Park Central Drive, Suite 1700, Dallas, TX 75251 (hereinafter referred to as "Lender") and the borrower(s) named below (hereinafter referred to individually and collectively, jointly and severally and interchangeably as "Borrower").

| | |
|---|---|
| Borrower: | DAVID G. DOOLE |
| Address: | 152 MOORE CROSSING SOUTH |
| | BYHALIA, MS 38611 |

1. **Promise to Pay.** In consideration of Lender making a loan to Borrower subject to the terms and conditions set forth in this Agreement, Borrower absolutely and unconditionally promises to pay to the order of Lender the principal amount of **ONE HUNDRED ELEVEN THOUSAND FIFTY FIVE AND 00/100** Dollars **($111,055.00)**, plus interest from the Execution Date on the unpaid principal balance outstanding from time to time at the rate of **TEN** percent **(10.00%)** per annum (but in no event shall such rate exceed any maximum permitted by applicable law). Principal and interest shall be paid in **48** consecutive monthly installments/payments (hereinafter referred to as "installments" or "payments") as follows:

| | | | |
|---|---|---|---|
| 47 | Installment(s), each in the amount of | $ 2,845.58 | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |

a final installment, in the amount of the then unpaid principal balance plus all accrued and unpaid interest and any other amounts due and owing under and pursuant to this Agreement.

2. **Payment Terms.**

   2.1. **Commencement Date/Application of Payments.** Consecutive monthly installments shall commence on the **1ST** day of **OCTOBER, 2016**, and shall be due on the same day of each month thereafter until the indebtedness under this Agreement is paid in full. Each installment, at Lender's discretion may be applied first to accrued and unpaid interest and late charges if any, with the remainder applied to reduction of principal.

   2.2. **Payment Direction.** All payments shall be made in lawful money of the United States at Lender's address listed herein or such other place, which Lender may designate in writing from time to time.

   2.3. **Late Charges.** If any payment of the Obligations (as defined below) remains overdue for more than ten (10) days after the due date, Borrower hereby agrees to pay on demand, as a late charge, an amount equal to the lesser of (i) five percent (5%) of each such overdue installment, or (ii) the maximum percentage of any such overdue installment permitted by applicable law. Borrower agrees that the amount of such late charge represents a reasonable estimate of the cost to Lender of processing a delinquent payment and that the acceptance of any late charge shall not constitute a waiver of default with respect to the overdue installment or prevent Lender from exercising any of its other available rights and remedies.

Triumph LSA 1 601001 v02.00

Copyright 2015



EXHIBIT

A

2.4.    **Returned Payments**. If Borrower's check (or payment in any other form) is returned unpaid or otherwise rejected for any reason Borrower agrees to pay Lender a fee (the "Returned Payment Fee") in the amount of $25.00, or such lesser amount as may be limited by law. Lender may add the fee to the amount Borrower owes or collect the fee separately.

2.5.    **Joint and Several Liability**. If more than one party signs this Agreement as Borrower, the obligations of each of them shall be joint and several regardless of the source of the collateral or the particular Borrower with which the obligation originated, and each Borrower waives any suretyship or other defenses that it might raise with respect to any other Borrower.

3. **Interest**. Interest shall be calculated on the basis of a 360-day year and for the actual number of days elapsed, unless such calculation would cause the effective rate of interest to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. In no event shall this Agreement be enforced in any way that permits Lender to charge or collect interest or late charges in excess of the maximum lawful rate. In such event, Borrower agrees that Lender shall not be subject to any penalties for contracting for or collecting interest or late charges in excess of the maximum lawful rate. Notwithstanding anything to the contrary in this Agreement or any related writing, all agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by Lender exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstances whatsoever, interest would otherwise be payable to Lender in excess of the maximum lawful amount, the interest payable to Lender shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Lender shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof (or due under any other agreement) and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal hereof (or due under any other agreement) such excess shall be refunded to Borrower, if allowed by applicable law. All interest paid or agreed to be paid to Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon (or due under any other agreement) for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Borrower and Lender.

4. **Prepayment**. As a material inducement to Lender to advance funds or otherwise provide financial accommodations to or for the benefit of Borrower, and or in consideration of Lender having previously done so, it is agreed that Borrower shall not unless otherwise required by law, have any right to voluntarily prepay any indebtedness for borrowed money now or hereafter owing to Lender; provided however that Borrower may, subject to the terms and conditions contained herein, have the privilege of voluntarily prepaying the obligation set forth in paragraph 1 of this Agreement in part or full at any time, provided, Borrower shall: (i) give five (5) days' prior written notice to Lender specifying the date and amount of any proposed voluntary prepayment and the indebtedness being voluntarily prepaid, and (ii) prepay a minimum amount of $10,000 or greater, and (iii) pay the amount specified in such voluntary prepayment notice, in good funds, on the date specified in such notice, and (iv) simultaneously pay, in good funds, all principal, interest, late charges, and other charges accrued and/or due to Lender through the date of any such voluntary prepayment, and (v) simultaneously pay a prepayment premium equal to the product of .20% of the principal amount then being voluntarily prepaid multiplied by the number of whole or partial calendar months between the date of the voluntary prepayment and the scheduled final maturity date, but in no event shall such amount exceed the maximum amount permitted by applicable law. Any voluntary partial prepayment shall be applied to the scheduled installment(s) of the indebtedness in the reverse order of their respective maturities, so that the amount and due date of only the latest maturing installment(s) shall be affected thereby and unless Lender agrees otherwise in writing, Borrower may not skip payments. The principal amount of any voluntary partial prepayment shall be applied as determined by Lender in its sole and absolute discretion. To the extent permitted by applicable law, if Lender accelerates the maturity of sums due under this Agreement as a result of Borrower's default, Lender has the right to charge Borrower, and Borrower agrees to pay Lender, in addition to any other remedy, liquidated damages in an amount equal to the product of .20% of the accelerated unpaid principal balance due under this Agreement multiplied by the number of whole or partial calendar months between the date of the default and the scheduled final maturity date of this Agreement, but in no event shall such amount exceed the maximum amount permitted by applicable law. Lender and Borrower covenant and agree

Triumph LSA 1 601001 v02.00

Copyright 2015

to take all such actions and to execute all such documents as may be desirable to implement the provisions of this Agreement fully and effectively.

5. **Disclaimer.** THIS AGREEMENT IS A LOAN AND SECURITY AGREEMENT. BORROWER ACKNOWLEDGES THAT THE EQUIPMENT (AS DEFINED HEREIN BELOW) HAS BEEN OR WILL BE SELECTED AND ACQUIRED SOLELY BY BORROWER AND THAT LENDER MAKES NO REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY OR FITNESS OF THE EQUIPMENT (AS DEFINED HEREIN BELOW) FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED. BORROWER'S OBLIGATIONS HEREUNDER ARE ABSOLUTE AND UNCONDITIONAL.

6. **Collateral.** The goods, chattels and property listed on Schedule A hereto (hereinafter referred to as the "Equipment") and any and all accounts, accounts receivable, chattel paper, electronic chattel paper, collateral, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, securities entitlements, deposit accounts, investment property and all other property of whatever nature and kind, wherever located, now owned or hereafter acquired by Borrower, or in which Borrower now or hereafter has any right or interest in, and all attachments, accessories, accessions, substitutions, replacements, replacement parts, additions, software and software upgrades, including, without limitation, all property listed on any schedule to any agreement between the parties, and all cash and non-cash proceeds (including rental proceeds, insurance proceeds, accounts and chattel paper and/or electronic chattel paper arising out of or related to the sale, lease, rental or other disposition thereof) of and to all of the foregoing and is hereby collectively defined and referred to herein as the "Collateral" for all purposes. Borrower represents that the Collateral (without exception) shall be used exclusively for commercial business purposes and operations and not for personal, family or household purposes.

7. **Security Interests.** In consideration of Lender entering into this Agreement, Borrower hereby pledges, conveys, assigns and grants to Lender a security interest/lien in and to the Collateral to Lender and to its successors and assigns. The word "Lender" includes the subsidiaries, affiliates, heirs, successors, assigns and transferees. The security interest granted herein is to secure payment of any and all liabilities or obligations of Borrower to Lender, i) whether previously, contemporaneously or subsequently incurred or created, ii) whether joint or several, direct or indirect, absolute or contingent, matured or unmatured, secured or unsecured, heretofore arising, now existing or hereafter arising, iii) without reduction by reason of any claim, defense, set-off, abatement, offset, counterclaim or recoupment, and iv) whether under this Agreement or under any other writing between Borrower and Lender including but not limited to (a) any and all loans, advances, guaranties, notes, security agreements, lease agreements, rental agreements, bailment agreements, loan and security agreements, extensions of credit, endorsements, benefits and financial accommodations, or payments, previously, now or hereafter made, granted or extended by Lender to or on account of Borrower or which Lender has or may, grant or extend to or for the account of Borrower including the obligations to make payments hereunder; (b) any and all interest, commissions, obligations, liabilities, indebtedness, charges, late charges, interest, attorneys' fees and costs and expenses hereto and/or hereafter chargeable against Borrower by Lender or owing by Borrower to Lender or upon which Borrower may be and/or has become liable as endorser or guarantor; (c) all obligations and/or indebtedness of any and every kind of Borrower to Lender or any affiliate of Lender whether direct or indirect, whether contingent or absolute, whether matured or unmatured and whether now or hereafter arising, existing, incurred, contracted or owing to Lender in the future or acquired or to be acquired by Lender by one or more assignments, transfers or otherwise, including but not limited to amounts due upon any agreement or other obligations, given to or received by Lender or any affiliate directly from Borrower or by way of assignment from any one or more third parties and whether or not presently contemplated by the parties and (d) any and all extensions, renewals, amendments, rewrites, increases or modifications of any of the foregoing (all hereinafter called the "Obligations" and/or the "Liabilities"). Borrower hereby authorizes Lender to file and/or re-file any financing statement(s) and to be named as lienholder on any vehicle title(s) needed to perfect Lender's security interest in the Collateral, including, without limitation, any fixture filings and any amendments and continuation statements thereto pursuant to the Uniform Commercial Code then in effect (hereinafter referred to as the "Code"), in form satisfactory to Lender, and Borrower shall pay the cost of perfecting Lender's security interest in the Collateral as is deemed by Lender to be necessary or desirable.

8. **Representations and Warranties.** Borrower represents and warrants that:

8.1.    Borrower has the lawful and organizational power and authority to own its assets and to conduct the business in which it is engaged and is duly authorized and empowered to enter into this Agreement, to perform hereunder and to execute this Agreement as its legal, valid and binding obligation.

Page 3 of 13

8.2.   Borrower is duly existing and in good standing in its state of formation and qualified and licensed to do business in, and in good standing in, any state in which the conduct of its business or its ownership of property requires that it be qualified. Except as specifically disclosed in writing to Lender, Borrower (i) has not been known as or used any corporate, fictitious or trade names or (ii) has not been the surviving corporation of a merger or consolidation or acquired all or substantially all of the assets of any person.

8.3.   This Agreement and the other agreements, instruments and documents executed herewith do not and will not (a) violate any provisions of the articles of incorporation or formation, bylaws, operating agreement or other analogous governing documents of Borrower, or any contract, agreement, law, regulation, order, injunction, judgment, decree or writ to which Borrower is subject, (b) result in the creation or imposition of any lien upon any Collateral of Borrower, other than those contemplated hereby, (c) constitute or result in a default under any agreement, bond or indenture by which Borrower is bound or in which any of its property is subject or materially and adversely affects its ability to perform its obligations under this Agreement hereunder, or (d) requires the consent or approval of any other person or entity, including without limitation, any regulatory authority or governmental body of or within the United States.

8.4.   All financial statements and information relating to Borrower which have been furnished by Borrower to Lender have been prepared from the books and records of Borrower, accurately reflect Borrower's financial condition for the time period covered thereby, and are true, correct and complete in all material respects, and there have been no material adverse changes in the condition (financial or otherwise) or prospects of Borrower since submission of the loan application.

8.5.   Borrower has good, marketable and indefeasible title to its properties and assets reflected as being owned by it on any balance sheet of Borrower submitted to Lender as of the date thereof. Except for (i) the security interest granted to Lender under the Agreement and (ii) any other security interest previously disclosed by Borrower to Lender in writing, Borrower is the owner of the Collateral, has good and marketable title thereto free and clear from any adverse lien, security interest or encumbrance. Notwithstanding the foregoing, Borrower may not at any time pledge a security interest/lien to any party other than to Lender on, in or to any of the Equipment or the Collateral.

8.6.   Borrower has filed all tax returns and reports required to be filed and has paid all taxes, assessments, fees and other governmental charges levied upon it.

8.7.   Borrower is not in breach of or in default under any loan agreement, indenture, bond, agreement or other evidence of indebtedness, or any other material agreement or any court order, injunction or decree or any lien, statute, rule or regulation. Borrower's properties are and will continue to be in compliance with all federal, state and local laws, rules and regulations, and all orders of any federal, state or local legislative, administrative or judicial body or official, except to the extent the failure to so comply would not have a material adverse effect on Borrower. Borrower has obtained and will continue to maintain all permits, approvals, authorizations and licenses necessary to conduct its business as presently conducted, except to the extent the failure to have such permits, approvals, authorizations or licenses would not have a material adverse effect on Borrower.

8.8.   Except as disclosed to Lender in writing, there is no litigation, legal or administrative proceeding, investigation or other action of any nature pending, or to the knowledge of Borrower, threatened against or affecting Borrower which involves the possibility of any judgment or liability not fully covered by insurance, and which may adversely affect the business or the properties of Borrower or its ability to carry on business as now conducted or would adversely affect the ability of Borrower to satisfy its obligations under the Agreement.

8.9.   None of the preprinted text of this Agreement has been altered, modified, or stricken by Borrower or anyone else.

8.10.   Borrower or its authorized representative properly executed this Agreement in Borrower's name and all signatures on this Agreement are genuine.

8.11.   Borrower acknowledges and agrees that its obligations due hereunder are absolutely and unconditionally due and owing to Lender or its successors and assigns without notice or demand and there are no defenses, claims, counterclaims, causes of action, abatements, offsets or set-offs with respect to this Agreement and that this Agreement is fully enforceable against the Borrower. Borrower's obligation to pay the installments and other payments due hereunder shall be absolute and unconditional and shall not be affected by reason of (i) any defect in, lack of fitness for use of, damage to, loss of possession or use of or destruction of, all or any of the Collateral or Equipment, and/or (ii) the prohibition or other restriction against Borrower's use of said Collateral or

Page **4 of 13**

Copyright 2015

Equipment, and/or (iii) any other cause, it being the agreement of the parties that this Agreement and any other amount payable by Borrower hereunder shall continue to be payable in all events in the manner and at the times provided herein or in any amendment or extension executed by the parties.

9. **Covenants by Borrower**. Borrower agrees:

9.1. Borrower will not amend its certificate or articles of incorporation, formation, or partnership agreement (as applicable), its bylaws or operating agreement or otherwise change its legal name or structure, or consolidate with or merge into or acquire any person or entity, or permit any other person or entity to consolidate with or merge into or acquire Borrower or acquire the stock of any person or entity or form any subsidiary, without prior approval of Lender or permit any material change to be made in the character of its business as conducted as of the date hereof.

9.2. Borrower will maintain its legal existence, rights and franchises and observe and comply with all applicable laws, statutes, codes, acts, ordinances, judgments, injunctions, rules, regulations, certificates, franchises, permits and licenses of all federal, state, county, municipal and other governmental authorities. Borrower agrees that it will not change the State where it was incorporated or formed or otherwise, nor change its name or address, without providing Lender with sixty (60) days prior written notice.

9.3. Borrower shall pay and promptly file all tax returns and reports required to be filed and pay when due all taxes (including but not limited to personal property taxes), assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Collateral or for its use or operation or upon this Agreement or upon any instruments evidencing the Obligations.

9.4. Borrower shall use the Collateral for commercial and business purposes only and operate it by qualified personnel in accordance with applicable manufacturers' and regulatory maintenance and performance standards. Borrower shall adhere to reasonable practices for Borrower's industry and the type of Collateral. Borrower shall keep the Collateral (a) free from any adverse lien or encumbrance (and shall promptly notify Lender of any attachment of any such lien or any seizure or levy), (b) in good working order, condition and repair and shall not waste or destroy the Collateral or any part thereof and (c) appropriately protected from the elements, and shall furnish all required parts and servicing (including any contract service necessary to maintain the benefit of any warranty of the manufacturer). Borrower shall not use the Collateral in violation of any statute, ordinance, regulation or order. Lender may examine and inspect the Collateral and any and all books and records of Borrower during business hours at any time and such right of inspection shall include the right to copy Borrower's books and records and to converse with Borrower's officers, employees, agents, and independent accountants.

9.5. Borrower shall not sell, lease, assign, transfer or otherwise dispose of (i) the Collateral, except as otherwise specifically permitted by the Agreement, or (ii) all or any substantial part of its assets, without the prior written consent of Lender.

9.6. The Collateral shall be kept primarily at Borrower's address listed in this Agreement, or listed on any Schedule(s) hereto (unless the Collateral is mobile, in which case it may be moved in the ordinary course of business), and Borrower shall give prompt written notice to Lender of any change in the location(s) of the Collateral. Notwithstanding the foregoing, the Collateral shall not be moved outside the United States of America without Lender's prior written consent.

9.7. Borrower shall not permit the Collateral to become attached to real estate in such a way that it would be considered part of the realty or designated a "fixture." Notwithstanding any presumption of applicable law, and irrespective of any manner of attachment, the Collateral shall not be deemed real property but shall retain its character as personal property. However, Borrower shall, at the option of Lender, furnish the Lender with waiver(s) of any interest in the Collateral in recordable form, signed by all persons having an interest in the real estate where the Collateral may be located, which is or might be deemed to be prior to Lender's security interest.

9.8. Borrower shall keep the Collateral free and clear of any lien, security interest or encumbrance (except for the security interest/lien granted hereunder to Lender) and shall not sell, lease, assign (by operation of law or otherwise) exchange or otherwise dispose of any of the Collateral, except as expressly permitted herein. Borrower shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein. At the request of Lender, Borrower shall execute, acknowledge and deliver to Lender any document or instrument required by Lender to further the purposes of the Agreement. If any of the Collateral is subject to certificate of

Triumph LSA 1 601001 v02.00                                                                                        Copyright 2015

title law, Borrower will cause Lender's security interest/lien to be noted on such certificate of title and promptly deliver such certificate to Lender.

10. **Financial Statements.** Borrower shall furnish to Lender such financial statements, income statements, balance sheets, statements of cash flow, income tax returns, operating statements and other financial information as requested by Lender in its sole and absolute discretion. Borrower and any Guarantor agrees that any financial statements or other nonpublic information which Borrower or any Guarantor provides to Lender may be disclosed by Lender for legitimate business purposes to Lender's officers, directors, employees, agents, affiliates, attorneys, advisors, recourse providers, prospective assignees or participants, auditors, regulators or other parties pursuant to law.

11. **Insurance.** Borrower shall maintain and will continue to maintain with financially sound and reputable insurers, insurance with respect to the Collateral against all risks of loss or damage from every cause and other risks with such coverage and containing such terms, in such form, for such periods and written by such companies as shall be satisfactory to Lender. Furthermore, Borrower shall furnish to Lender appropriate additional insured endorsements and/or lender loss payable endorsements in form and substance satisfactory to Lender, naming Lender as loss payee as its interests may appear, and providing (a) for not less than the full replacement value as determined by Lender in its sole discretion and shall carry liability and property damage insurance covering the Equipment and ensure that all proceeds thereunder shall be payable to Lender (the proceeds of such insurance, at the option of Lender, shall be applied toward the replacement, repair or applied to reduce the indebtedness of Borrower to Lender), (b) no such insurance shall be affected by any act or neglect of the insured or owner of the property described in such policy, and (c) that such policy and loss payable clauses may not be cancelled, amended or terminated unless at least thirty (30) days' prior written notice is given to Lender, and Borrower shall ensure that the policies reflect such information. Upon request of Lender, Borrower will furnish or cause to be furnished to Lender from time to time certificates or other evidence satisfactory to Lender of compliance with the foregoing insurance provisions as well as a summary of the insurance coverage of Borrower and the Subsidiaries in form and substance satisfactory to Lender and, if requested, will furnish Lender copies of the applicable policies.

12. **Power of Attorney.** BORROWER HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE, DESIGNEE OR ASSIGNS OF LENDER, AS BORROWER'S ATTORNEY-IN-FACT TO, IN BORROWER'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE COLLATERAL; (b) PREPARE, SUBMIT, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OF RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY COLLATERAL THAT SECURES OR THAT MAY SECURE THE INDEBTEDNESS OF BORROWER TO LENDER AND (c) ENDORSE BORROWER'S NAME ON ANY REMITTANCE, CHECK OR DRAFT REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE COLLATERAL OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE COLLATERAL. THIS POWER IS COUPLED WITH AN INTEREST AND IS IRREVOCABLE AS LONG AS THE INDEBTEDNESS HEREUNDER REMAINS UNPAID.

13. **Events of Default.** The occurrence of any one or more of the following events shall constitute an "Event of Default": (i) Borrower fails to promptly pay any payment required hereunder on or before the due date of such payment including but not limited to those identified in paragraph 1 above, or in any amendment or extension agreement entered into between the parties; (ii) Borrower or any guarantor shall (a) fail to pay any indebtedness for borrowed money of the Borrower or such Guarantor, or any interest or premium thereon, when due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise), or (b) fail to perform any term, covenant, or condition on its part to be performed under any agreement or instrument relating to such indebtedness, or if any such indebtedness shall be declared to be due or payable or required to be prepaid (other than by a regularly scheduled required prepayment) prior to the stated maturity thereof, or (c) default under any other agreement for borrowed money, or (d) fail to perform any of the other obligations required to be performed by Borrower or Guarantor hereunder or under any Schedule, amendment, or documents executed in connection herewith or any other agreements between the parties, or if Borrower or any Guarantor defaults in the payment or performance of any other obligations due and owing to Lender or its affiliates, or (e) fails to comply with any representation, warranty or covenants contained herein or in any other agreement between the parties, or (iii) the death of Borrower or any Guarantor, if a natural person, or the dissolution of Borrower or any Guarantor, if a business organization, or (iv) the filing of any petition or complaint under the federal Bankruptcy Code or other federal or state acts of similar nature, by or against Borrower, or an assignment for the benefit of creditors by Borrower, or (v) an application for or the appointment of a receiver, trustee or

Copyright 2015

conservator, voluntary or involuntary, by or against Borrower or for any substantial assets of Borrower, or (vi) insolvency of Borrower under either federal or state law or applicable principles of equity, or (vii) entry of judgment, issuance of any garnishment or attachment, or filing of any lien, claim or government attachment against the Collateral or which, in Lender's sole discretion, might impair the Collateral or the failure to pay, including without limitation, any taxes, liens, mechanics liens, warehouseman's liens, or (viii) any representation, covenant or warranty made by Borrower herein or in any other agreement between the parties or in any statement given to Lender shall be materially untrue or the determination by Lender that a material misrepresentation of fact has been made by Borrower in this Agreement or in any writing supplementary or ancillary hereto, or (ix) a determination by Lender that Borrower has suffered a material adverse change in its condition (financial or otherwise), business or operations from the date of this Agreement and/or Lender in good faith believes that the prospect of payment or performance of any of the obligations under this Agreement is impaired and/or Borrower or Guarantors affairs so change as to in Lender's opinion, increase the credit risk involved and Lender thereby becomes insecure as to the performance of this Agreement or any other agreement between the parties, or (x) any actual or anticipated revocation, nonrenewal or termination of a guarantee, letter of credit, surety bond or other instrument issued for the benefit of Lender as additional security for the Obligations, or (xi) any unauthorized filing by Borrower of a termination statement for any financing statement or other recorded instrument filed by Lender, or (xii) a change in the management, operations, ownership of stock or membership units or control of Borrower; or Borrower sells all or substantially all of its stock or partnership or membership interests; or Borrower sells all or substantially all of its assets or consolidates with or merges into any other entity; or its stockholders, partners or members sell all or substantially all of their stock or partnership or membership interests, or (xiii) Lender at any time deems the security afforded by this Agreement unsafe, inadequate or at any risk or any of the Collateral is or becomes in danger of concealment, transfer, sale, assignment, hypothecation or misappropriation, or (xiv) the filing or imposition of any levy, execution or attachment, against Borrower or any guarantor that is not released within sixty (60) hours, or (xv) Borrower shall incur, create, assume, cause or suffer to exist any mortgage, deed of trust, trust, lien, security interest, pledge, hypothecation, other encumbrance (except Lender's security interest), or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral or any of Lender's security interests under this Agreement or any of the Obligations, or (xvi) Borrower shall sell, transfer, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral, or (xvii) failure of Borrower a) to provide Lender with proof of insurance on the Collateral and in which names Lender as loss payee or b) to obtain or maintain insurance on the Collateral, all of the foregoing in a form and amounts satisfactory to Lender in its sole discretion, or (xviii) any of the Obligations, this Agreement, the security interest granted herein or any provision hereof for any reason attributable to Borrower, ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Borrower or Borrower shall deny that it has any further liability or obligation hereunder, or (xix) Borrower defaults in the prompt payment, performance or fulfillment of any obligations of any kind or nature to any other party, or (xx) Borrower or any Guarantor ceases to do business, or (xxi) a judgment is entered against Borrower or any Guarantor.

14. **Remedies.** Upon the occurrence of any default or Event of Default, or in the event of a default in the payment of any amount when due, or in the event of a default in the performance or any nonperformance of any obligation due and owing under this Agreement or any Obligations of Borrower to Lender: (i) all Liabilities of Borrower shall, at the option of Lender, become immediately due and payable and Lender may accelerate the maturity of the entire unpaid indebtedness and declare the entire indebtedness under all or any part of the Obligations to be at once due and immediately payable, whereupon the entire unpaid indebtedness shall become immediately due and payable without notice or demand. The right to accelerate maturity of sums due under this Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration, and (ii) Lender shall have and may exercise all of the rights and remedies granted to a secured party under the Code, and all other rights and remedies available to creditors at law or in equity and Lender may sue to enforce Borrower's performance hereunder, or may exercise any other remedy then available to Lender permitted at law or in equity whether or not stated herein and whether stated in this paragraph or any other paragraph contained in the Agreement or any other agreement between the parties, and (iii) Lender shall have the right, immediately, and without notice or other action, to set-off against any of Borrower's liabilities to Lender, any money owed by Lender in any capacity to Borrower, whether or not due, and (iv) Lender is hereby authorized and empowered, with or without the aid of any person or persons, to enter any premises where any of the Collateral or any part thereof is or may be located, and to assemble and/or remove the Collateral and/or to render the Collateral unusable and may take possession of all or part of the Collateral, at any time, wherever the Collateral may be and Lender may proceed with or without judicial process to take possession of all or any part of the Collateral, and (v) Borrower agrees that Lender may enter any premises, with or without process of law, voluntarily or involuntarily, without notice, demand or legal process (Borrower, if permitted by applicable law, hereby waiving any right to

Triumph LSA 1 601001 v02.00                                                                                              Copyright 2015

notice or a hearing) and search for the Collateral or any part thereof, and Lender may repossess/take possession of, remove, and/or keep and store the Collateral on said premises until sold, without liability for trespass nor charge for storage, all without liability to Borrower arising out of such entry, taking possession or removal, or using premises to store or show the Collateral for sale or other disposition without charge. Borrower shall do everything necessary to make same available to Lender (including, without limitation, assembling the Collateral, delivering and making it available to Lender at a place designated by Lender which is reasonably convenient to Borrower and Lender), and (vi) Borrower agrees to immediately deliver possession of the Collateral to Lender, and agrees to assign, transfer and deliver at any time the whole or any portion of the Collateral or any rights or interest therein in accordance with the Code and other applicable law without limiting the scope of Lender's rights thereunder, and (vii) Subject to applicable law, Lender may sell the Collateral at public or private sale, or retain the Collateral in full or partial satisfaction of the indebtedness due to Lender or dispose of the Collateral in any other commercially reasonable manner and, at the option of Lender, in bulk or in individual units or both and with or without having the Collateral at the sale or other disposition, all free and clear of any claims or rights of Borrower and Borrower agrees that in case of sale or other disposition of the Collateral described above, or any portion thereof, Lender shall apply all proceeds first to all costs and expenses of disposition, including reasonable attorneys' fees and court costs and expenses, and then to Borrower's Obligations to Lender, and Borrower acknowledges and agrees that in any action or proceeding brought by Lender to obtain possession of any Collateral, Lender shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Borrower. If Borrower contests Lender's right to possession of any Collateral in any action or proceeding, Borrower shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Borrower's unpaid Obligations to Lender, whichever is less. Borrower agrees that upon the request of Lender, after any default, to segregate and hold all or any part of the Collateral in a fiduciary capacity and to adequately maintain, service and insure said property and to protect same from use and/or abuse, all without charge to Lender, such fiduciary duty to terminate only upon the actual delivery of the Collateral to Lender. Lender may require Borrower to i) pay all accrued interest, late charges, collection charges, the default rate of interest, reimbursement for any and all costs and expenses incurred by Lender in enforcing any of the Obligations or this agreement and any reasonable attorneys' fees, ii) deliver any or all of the Collateral at Borrower's expense to such place or places as Lender may designate. No failure or delay on the part of Lender to exercise any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy. Lender does not waive any right and/or remedy not exercised and retains all rights and remedies subject to applicable law. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies. The provisions of this Agreement and the rights and remedies granted to Lender herein shall be in addition to, and not in limitation of, those of any other agreement with Lender, the Code or any other evidence of any obligations held by Lender.

15. **Default Rate of Interest**. Upon the occurrence of an Event of Default any amounts due and to become due hereunder shall, without notice, bear interest, from the date such amounts are due until paid, at a rate (referred to as the "**Default Rate or Delinquent Interest**") which is the lesser of: (a) the maximum rate per annum which Lender is permitted by law to charge, or (b) eighteen percent (18%) per annum.

16. **Disposition; Expenses.** Borrower shall pay all reasonable expenses of Lender in obtaining possession, the disposition of and realizing upon the Collateral and collecting all liabilities of Borrower to Lender, including but not limited to any collection agency fee. In any interpretation or enforcement of the Agreement or any dispute related thereto or to the relationship between the parties, Borrower shall pay Lender's legal expenses and reasonable attorneys' fees, including any incurred before and at trial, on appeal, in any other proceeding or without any litigation being filed. Any notification of a sale or other disposition of the Collateral or of other action by Lender required to be given by Lender, will be sufficient and deemed commercially reasonable if given personally, or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days prior to the day on which such sale or other disposition will be made or action taken. In the event Lender sells all or part of the Collateral at public or private sale: (i) Lender shall not be required to refurbish, repair or otherwise incur any expenses in preparing the Collateral for sale but may sell its interest therein on an "AS-IS," "WHERE-IS" basis, if allowed by applicable law, and whether or not the items sold are in Lender's possession and present at the time and place of sale; (ii) Lender may, but shall not be obligated to, bid, credit bid or become the purchaser at any such sale, may or may not set any minimum bid, and may sell the Collateral in individual units or in bulk, including all of the Collateral sold in one lot as a whole; (iii) Borrower waives any and all rights of redemption from any such sale; (iv) Any public sale will be deemed commercially reasonable if notice thereof is provided to Borrower personally or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or

                                                        Copyright 2015

emailed (if legally permissible) at least ten (10) days before such sale, and sent to the address indicated above, and advertised in at least one newspaper of general circulation in the area of the sale (available on the newspaper's website in electronic format or in print) at least twice prior to the date of sale (and in the event there is no newspaper of general circulation, other electronic means to publicly notice the sale) and if upon terms of ten percent (10%) cash down with the balance payable in good funds within twenty-four (24) hours after the sale or such other more favorable terms as may be agreed to by Lender; (v) Any private sale shall be deemed commercially reasonable if notice thereof shall be provided to Borrower personally, or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days before the sale date stated therein sent to the address indicated above; (vi) The proceeds of any public or private sale shall be applied first to pay all costs, expenses and charges including but not limited to searching, locating, taking, removing, repossessing, keeping, advertising, marketing and selling the Collateral, reasonable attorneys' fees, costs and expenses, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions, and second to the payment, partly or entirely, of any of the Obligations in any manner as Lender may in its sole discretion elect, returning any excess to Borrower, if any, or such other party in interest as may be required by law. Notwithstanding the foregoing, the Borrower shall remain liable to Lender for any deficiency due and owing after application of the proceeds described above, plus late charges and Delinquent Interest and other amounts as provided herein. No action taken by Lender shall release Borrower from any of the Obligations or its obligations to Lender. Failure of Lender to comply with the terms listed in this paragraph shall not render any sale invalid or commercially unreasonable. Lender may without prior notice to or demand upon Borrower and with or without the exercise of any of Lender's other rights or remedies, apply toward the payment of Borrower's Obligations (at any time owing to Lender) any checks, drafts, agreements, balances, reserves, accounts and sums belonging to or owing to Borrower and coming into Lender's possession and for such purpose may endorse Borrower's name on any instrument or document payable to Borrower (whether for deposit, collection, discount or negotiation). Without notice to Borrower, Lender may make such applications or change applications of sums previously paid and/or to be paid to Lender, to such Obligations as Lender in its sole discretion may choose.

17. **Protection of the Collateral.** At its option and in its sole discretion, Lender may discharge taxes, liens or other encumbrances at any time levied or placed on the Collateral, and may pay for insurance and maintenance and preservation of the Collateral. Borrower agrees to reimburse Lender on demand for any payment made or any expense incurred by Lender pursuant to the foregoing authorization and to pay a fee for additional monitoring incurred by Lender for Borrower's failure to maintain coverage or protection as provided herein. Any payments made by Lender shall be immediately due and payable by Borrower and shall bear interest at the Default Rate. Should Borrower fail to pay taxes or repairs relating to the Collateral or to maintain or obtain insurance, Lender shall have the right, but not the obligation, and without releasing Borrower from any obligation hereunder, to pay any sum due in connection therewith or to contest or compromise any encumbrance, charge, tax or lien and in exercising any such rights, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary. If Lender shall pay for any of the foregoing, Borrower shall promptly reimburse Lender therefore on demand together with interest thereon at the Default Rate.

18. **Additional Security, Right to Set-off.** Lender may proceed against and/or enforce any of its rights with respect to the Collateral in whatever order it may, in its sole discretion, deem appropriate. Any amount(s) received by Lender from whatever source may be applied by Lender to any of the Obligations and may be applied in such order of application, as Lender shall from time to time, in its sole discretion, elect. To the extent permitted by applicable law, Lender reserves a right of set-off in all of Borrower's accounts and deposit accounts with Lender (whether checking, savings, money market or some other account). This includes all accounts and deposit accounts Borrower holds jointly with someone else and all accounts and deposit accounts Borrower may open in the future. However, this does not include any IRA, Keogh accounts, or any trust account(s) whereupon set-off would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or set-off all sums owing on the indebtedness against any and all such accounts and/or deposit accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and set-off rights provided in this paragraph.

19. **Assignment.** All covenants and agreements contained by or on behalf of Borrower or any Guarantor in this Agreement shall bind its successors and assigns or the heirs and personal representatives of any individual guarantor and shall inure to the benefit of Lender and its successors and assigns. Lender may sell or assign any and all right, title and interest it has under this Agreement and in the Collateral, in whole or in part. Borrower shall, upon the direction of Lender: (a) execute all documents necessary to effectuate such assignment, and (b) pay directly and promptly to Lender's assignee, without abatement, deduction, offset, set-off, defenses, claims, counterclaims, or causes of action, all amounts which have become due under the assigned agreements. Lender's assignee shall have any and all rights, immunities and discretion of Lender

Page **9** of **13**

                                    Copyright 2015

hereunder and shall be entitled to exercise any remedies of Lender hereunder. All references herein to Lender shall include Lender's assignee (except that said assignee shall not be chargeable with any obligations or liabilities hereunder or in respect hereof). Borrower shall not assert against Lender's assignee any abatement, deduction, offset, defense, claim, counterclaim, causes of action or set-off which Borrower may assert it has against Lender. Borrower shall not assign or in any way dispose of all or any of its rights or obligations under this Agreement or enter into any agreement regarding all or any part of the Collateral without the prior written consent of Lender which may be withheld or denied, in its sole and absolute discretion, and any such purported assignment without the prior written consent of Lender by Borrower shall be null and void ab initio. In connection with the granting of such consent and the preparation of necessary documentation, a fee, determined by Lender in its sole and absolute discretion, shall be assessed. In the event that Lender has consented in writing, in its sole or absolute discretion, to any lease or license of the Collateral or any part thereof, Borrower hereby assigns and grants to Lender a security interest in any and all rights under any lease(s) or license(s), to secure all Obligations to Lender, and Borrower shall deliver to Lender the original of such lease(s).

20. **Entire Agreement.** THIS AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENTS AND EMBODIES THE FINAL AND ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PRIOR AGREEMENTS AND UNDERSTANDINGS RELATING TO THE SAME SUBJECT MATTER HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. Borrower acknowledges that no promises of any kind have been made by Lender or any third party to induce Borrower to execute this Agreement except to the extent expressly contained herein. Upon request, the parties will promptly execute and deliver such other and further documents and instruments, and shall do or take such other actions as may be reasonably required or appropriate, to cure any defects in the creation and issuance of this Agreement or in the perfection or preservation of the security interests contemplated herein.

21. **Amendment and Waiver.** No termination, waiver, amendment or modification of any of the terms or provisions of this Agreement or any obligation of Borrower to Lender shall be valid or binding unless set forth in a writing signed by a duly authorized officer of Lender, and then only to the extent specifically set forth therein. The waiver by Lender of any default hereunder or of any provisions hereof shall not discharge any party hereto from liability hereunder and such waiver shall be limited to the particular Event of Default and shall not operate as a waiver of any other or subsequent default.

22. **Attorneys' Fees; Expenses.** Borrower agrees to reimburse Lender on demand for the actual amount of all costs and expenses, including reasonable attorneys' fees, fees of auditors and accountants, and investigation expenses, UCC and tax lien searches, credit investigation fees, which Lender may incur in: (a) preparing, negotiating, closing, funding, amending, interpreting, administering and/or enforcing this Agreement and any documents prepared in connection herewith; (b) protecting, preserving or enforcing any lien, security interest or other right granted by Borrower to Lender or arising under applicable law, whether or not suit is brought; (c) in defense of Lender's interest or ownership rights in the Collateral including its priority; (d) in connection with any federal or state insolvency proceeding commenced by or against Borrower, or any subpoena or other legal process in any way relating to Borrower, including but not limited to those arising out of the automatic stay or seeking relief thereof, seeking dismissal or conversion of the bankruptcy proceeding or opposing confirmation of Borrower's plan thereunder. This provision shall survive termination of this Agreement. Notwithstanding the existence of any law, statute, rule or otherwise, in any jurisdiction which may provide Borrower with a right to attorneys' fees or costs, Borrower hereby waives any and all rights to seek such attorneys' fees or costs and Borrower agrees that Lender exclusively shall be entitled to indemnification and recovery of any and all reasonable attorneys' fees or costs in respect to any litigation based hereon, arising out of, or related hereto, whether under, or in connection with, this and/or any agreement executed in conjunction herewith, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of either party.

23. **Choice of Law; Venue and Jurisdiction.** INTENDING THAT EACH AND EVERY PROVISION OF THIS AGREEMENT BE FULLY EFFECTIVE AND ENFORCEABLE ACCORDING TO ITS TERMS, THE PARTIES AGREE THAT ANY CLAIM, CONTROVERSY, DISPUTE, THE VALIDITY, ENFORCEABILITY AND EFFECTIVENESS OF EACH PROVISION HEREOF AND THE OBLIGATIONS OF THE BORROWER, AND THE RIGHTS AND REMEDIES OF THE LENDER IN ANY WAY RELATED TO OR ARISING UNDER THIS AGREEMENT OR UNDER ONE OR MORE OBLIGATIONS OF BORROWER TO LENDER AND THE RELATIONSHIP OF THE PARTIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO THE CONFLICTS OF LAWS PRINCIPLES

Triumph LSA 1 601001 v02.00                                                                 Copyright 2015

OR PROVISIONS THEREIN EXCEPT TO THE EXTENT THAT THE FEDERAL LAWS OF THE UNITED STATES OF AMERICA OTHERWISE PREEMPT TEXAS LAW, IN WHICH EVENT FEDERAL LAW SHALL CONTROL. BORROWER HEREBY IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE STATE OF TEXAS IN CONNECTION WITH ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THE AGREEMENT OR THE OBLIGATIONS OR THE TRANSACTION CONTEMPLATED HEREBY. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Lender so elects, be instituted in any State or Federal Court sitting in Dallas County, Texas or, if none, any court sitting in the State of Texas (the "Acceptable Forums"). Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction and/or based upon venue or "forum non conveniens" in connection with any such action or proceeding. Should such proceeding be initiated in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum.

24. **Counterparts**. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart by electronic transmission shall be effective as delivery of a manually executed counterpart, and any party delivering such an executed counterpart shall thereafter also promptly deliver a manually executed counterpart, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

25. **Notice**. All communications under or in connection with this Agreement (other than notices of public or private sale, which have notice provisions described in this Agreement) shall be in writing and personally delivered to an officer of the receiving party and/or shall be mailed by registered or certified mail, return receipt requested, postage prepaid, to the addresses of the parties listed in this Agreement or to such other addresses as each such party may in writing hereafter indicate in compliance with this Agreement. Any notice so addressed and mailed by registered or certified mail, return receipt requested, shall be deemed to be given to Borrower when so mailed and to Lender upon actual receipt by an authorized officer of Lender, and any notice so delivered in person shall be deemed to be given when actually received by, or receipt therefor is given by, an authorized officer of Borrower or Lender, as the case may be.

26. **DTPA Waiver**. Borrower acknowledges and agrees that Borrower has the knowledge and experience in financial and business matters to evaluate the merits and risks of the business transaction contemplated herein, is not in a disparate bargaining position relative to negotiating this Agreement and willingly waives and releases, without limitation, all rights and remedies associated with the Texas Deceptive Trade Practices Act ("DTPA") or such similar statute.

27. **Invalidity and Statute of Limitations**. In the event that any one or more of the provisions contained in this Agreement is/are in conflict with any statute, judicial decision or law and thus not valid or enforceable or is held, rendered or declared invalid, illegal or unenforceable in any respect by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision regarding the invalidity, illegality or unenforceability shall not affect, impair, invalidate or nullify the remainder of this Agreement or any other provision of this Agreement which shall remain in full force and effect. Borrower unconditionally and irrevocably stipulates and agrees that Borrower shall have no right to assert any claim, cause of action or counter claim, or to commence any action or proceeding against Lender as a result of, arising out of, or in any way related to the Agreement or the Collateral for the lesser of two years and one day after such claim, counter claim or cause of action shall accrue or any applicable statute of limitations. In no event shall the foregoing provision be read or interpreted to increase or lengthen any applicable statute of limitations.

28. **Survival of Agreements**. All representations and warranties of Borrower herein, and all covenants and agreements herein not fully performed before the effective date of this Agreement, shall survive such date.

29. **Renewal or Extension**. All provisions of this Agreement relating to the Obligations shall apply with equal force and effect to each, and to all documents and instruments hereinafter executed which in whole or in part represent a renewal, extension, increase, rewrite or rearrangement of any part of the Obligations. Any provision of this Agreement to be performed during the "term of this Agreement" "term hereof" or similar language, shall include any extension period. The loan documents exclusively represent the agreements between the parties and the intent of the parties thereto and supersede any prior proposal letters, commitment letters, oral covenants, oral agreements or negotiations.

Page **11** of **13**

Copyright 2015

30. **Cumulative Rights**. The rights and remedies of Lender under this Agreement shall be cumulative, and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any other right or remedy.

31. **Negotiation of Documents**. This Agreement has been negotiated by the parties at arm's length, each party represented by its own counsel, or waiving the right to be represented by counsel, and the fact that the documents have been prepared by Lender's counsel, after such negotiation, shall not be cause to construe any of such documents against Lender. Borrower acknowledges and agrees that this Agreement was deemed negotiated, approved, accepted and funded in Dallas, Texas. The Borrower has been advised and represents that it understands (i) that the Lender is a state savings bank in the State of Texas with its principal place of business in Dallas County, TX, (ii) that Lender negotiated, documented, closed and funded this Agreement in Dallas County, TX, (iii) that the documents will be maintained and stored in Dallas County, TX. The parties agree that any copy of this executed Agreement, including any photocopy, telecopy, electronic copy or facsimile thereof, shall have the same force and effect as though it were an original for all purposes, including but not limited to the enforcement of any of the terms and conditions thereof and the admissibility of such loan document in any legal or equitable proceeding.

32. **Debtor-Creditor Relationship**. None of the terms of this Agreement or of any other document executed in conjunction herewith or related hereto shall be deemed to give Lender the rights or powers to exercise control over the business or affairs of Borrower. The relationship between Borrower and Lender created by this Agreement is only that of debtor/creditor.

33. **Indemnification**. Borrower assumes liability for and agrees to defend, indemnify, protect, save and hold harmless Lender and its affiliates and their respective officers, directors, employees, agents, attorneys and advisors (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities, disbursements, costs and expenses, including, without limitation, reasonable attorneys' fees, court costs and expenses that may be incurred by or asserted or awarded against any Indemnified Party; i) arising out of or related to the Obligations, or the manufacture, financing, ownership, delivery, possession, use, operation, condition, or disposition of the Equipment by Borrower, including without limitation, any claim alleging latent and other defects, whether or not discoverable by Lender or Borrower and any other claim arising out of strict liability in tort, whether or not in either instance relating to an event occurring while Borrower remains obligated under this Agreement, and any claim for patent, trademark or copyright infringement, and/or ii) arising out of or related to any challenge to the nature or priority of Lender's security interest in/to the Collateral, except to the extent such claim, damage, loss, liability, cost or expenses is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this section applies, such indemnity shall be effective without prejudice to the survival of any other agreement of Borrower hereunder, and the agreements and obligations of Borrower contained in this section shall survive the payment in full of the indebtedness and all other amounts payable under this Agreement. To the maximum extent permitted by law, Borrower hereby knowingly, voluntarily and intentionally (and after each has consulted with its own attorney) irrevocably and unconditionally agrees that no claim may be made by Borrower against any Indemnified Party for any special, indirect, consequential or punitive damages in respect of any breach or wrongful conduct (whether the claim is based on contract, tort, common law or statute) arising out of, or related to, the transactions contemplated by this Agreement or any other Obligation or related documents, or any act, omission, or event occurring in connection herewith or therewith. In furtherance of the foregoing, Borrower hereby waives, releases and shall indemnify and hold harmless any and all Indemnified Parties from any such claims.

34. **Waiver of Trial by Jury**. **EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY FROM OR RELATING TO THEIR RELATIONSHIP, ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION AND/OR COUNTERCLAIM (a) ARISING UNDER THIS AGREEMENT OR ANY OTHER OBLIGATION, INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER OBLIGATION, INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO. THE PARTIES ACKNOWLEDGE THAT A RIGHT TO A JURY IS A CONSTITUTIONAL RIGHT, THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL, AND THAT THIS JURY WAIVER HAS BEEN ENTERED INTO KNOWINGLY AND VOLUNTARILY BY ALL PARTIES TO THIS AGREEMENT. IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR**

Triumph LSA 1 601001 v02.00

Copyright 2015

OTHERWISE, EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, CAUSE OF ACTION AND/OR COUNTERCLAIM SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

35. **Reversal of Payments**. Lender shall have the continuing and exclusive right to apply, reverse and re-apply any and all payments to any portion of the Obligations in a manner consistent with the terms of this Agreement. To the extent Borrower makes a payment or payments to Lender, or Lender receives any payment or proceeds of any collateral for Borrower's benefit, which payment(s) or proceed(s) or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then, to the extent of such payment or proceeds received, the Obligations or party thereof intended to be satisfied shall be revived and continued in full force and effect, as if such payment or proceeds had not been received by Lender.

36. **Injunctive Relief**. Borrower recognizes that, in the event Borrower fails to perform, observe or discharge any of its obligations or liabilities under this Agreement, any remedy at law may prove to be inadequate relief to Lender, therefore, Borrower agrees that if any default or Event of Default shall have occurred and be continuing, Lender shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages and without the posting of bond or other security in connection with such injunctive relief.

37. **Time of the Essence**. Time is of the essence with respect to the payment and performance of Borrower's obligations under this Agreement and any other agreement between Borrower and Lender.

38. **Use of Headings**. The headings used in each section of this Agreement are for ease of reference only. Such headings are not intended to serve any descriptive, explanatory or other purpose and are of no legal or other significance whatsoever. The terms "this Agreement," or "hereof," or "herein," or "hereunder," and any similar expressions refer to this Agreement and not to any particular paragraph or section or portion hereof. Lender and Borrower shall collectively be referred to herein as the "parties," and each individually as a "party."

IN WITNESS WHEREOF, the parties have executed this Agreement on the Execution Date.

**LENDER:**

TBK BANK, SSB

By: _____

Name: _____

Title: _____

**BORROWER:**

DAVID G. DOOLE,
a MISSISSIPPI SOLE PROPRIETOR

By: _____

Name: _____ DAVID G. DOOLE _____

Title: _____ SOLE PROPRIETOR _____

Page 13 of 13

Copyright 2015

## SCHEDULE "A"

This schedule is attached to and becomes part of that certain LOAN AND SECURITY AGREEMENT dated <u>AUGUST 4, 2016</u>, (hereinafter referred to as the "Agreement") between the undersigned parties listed below, the Borrower and TBK BANK, SSB, as Lender

### DESCRIPTION OF PROPERTY

| Manufacturer | Model and Specifications | Serial Number |
|---|---|---|
| DITCH WITCH | JT9 DIRECTIONAL DRILL WITH TKD TRACKER S/N 8384623 TD REMOTE DISPLAY S/N 8388905 17T1 BEACON  S/N 8390761 | CMWJT9XXEG0000244 |
| DITCH WITCH | FM5 MUD MIXER | CMWFM5XXAG0002096 |

and any and all additions, attachments, accessories, substitutions, replacements, replacement parts, software and software upgrades, and all cash and non cash proceeds including without limitation, any rental proceeds, insurance proceeds, accounts, accounts receivable, chattel paper and electronic chattel paper arising out of or related to the use, sale, lease, rental or other disposition thereof.  The Borrower hereby consents and agrees that all of the terms, provisions and obligations contained in the Agreement are in full force and effect and are hereby ratified and confirmed.

<u>**LENDER:**</u>

TBK BANK, SSB

By: _____

Name: _____

Title: ____VP____

<u>**BORROWER:**</u>

DAVID G. DOOLE

By: _____

Name: <u>DAVID G. DOOLE</u>

Title: <u>SOLE PROPRIETOR</u>

     Copyright 2015

## LOAN AND SECURITY AGREEMENT

**THIS LOAN AND SECURITY AGREEMENT** (hereinafter referred to as the "Agreement") is entered into as of **DECEMBER 9, 2016** (hereinafter referred to as the "Execution Date") by and between **TBK BANK, SSB**, a Texas State Savings Bank, having its principal place of business at 12700 Park Central Drive, Suite 1700, Dallas, TX 75251 (hereinafter referred to as "Lender") and the borrower(s) named below (hereinafter referred to individually and collectively, jointly and severally and interchangeably as "Borrower").

| | |
|---|---|
| Borrower: | DAVID G. DOOLE |
| Address: | 152 MOORE CROSSING SOUTH |
| | BYHALIA, MS 38611 |

1. **Promise to Pay.** In consideration of Lender making a loan to Borrower subject to the terms and conditions set forth in this Agreement, Borrower absolutely and unconditionally promises to pay to the order of Lender the principal amount of **FORTY SEVEN THOUSAND SEVEN HUNDRED FORTY SEVEN AND 14/100** Dollars (**$47,747.14**), plus interest from the Execution Date on the unpaid principal balance outstanding from time to time at the rate of **EIGHT AND ONE HALF** percent (**8.50%**) per annum (but in no event shall such rate exceed any maximum permitted by applicable law). Principal and interest shall be paid in **48** consecutive monthly installments/payments (hereinafter referred to as "installments" or "payments") as follows:

| | | | |
|---|---|---|---|
| 47 | Installment(s), each in the amount of | $ 1,181.20 | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |
| | Installment(s), each in the amount of | $ | ; then |

a final installment, in the amount of the then unpaid principal balance plus all accrued and unpaid interest and any other amounts due and owing under and pursuant to this Agreement.

2. **Payment Terms.**

   2.1.   **Commencement Date/Application of Payments.** Consecutive monthly installments shall commence on the **15TH** day of **JANUARY, 2017**, and shall be due on the same day of each month thereafter until the indebtedness under this Agreement is paid in full. Each installment, at Lender's discretion may be applied first to accrued and unpaid interest and late charges if any, with the remainder applied to reduction of principal.

   2.2.   **Payment Direction.** All payments shall be made in lawful money of the United States at Lender's address listed herein or such other place, which Lender may designate in writing from time to time.

   2.3.   **Late Charges.** If any payment of the Obligations (as defined below) remains overdue for more than ten (10) days after the due date, Borrower hereby agrees to pay on demand, as a late charge, an amount equal to the lesser of (i) five percent (5%) of each such overdue installment, or (ii) the maximum percentage of any such overdue installment permitted by applicable law. Borrower agrees that the amount of such late charge represents a reasonable estimate of the cost to Lender of processing a delinquent payment and that the acceptance of any late

Page 1 of 13





Copyright 2015

**EXHIBIT**
B

charge shall not constitute a waiver of default with respect to the overdue installment or prevent Lender from exercising any of its other available rights and remedies.

2.4.    **Returned Payments**.  If Borrower's check (or payment in any other form) is returned unpaid or otherwise rejected for any reason Borrower agrees to pay Lender a fee (the "Returned Payment Fee") in the amount of $25.00, or such lesser amount as may be limited by law.  Lender may add the fee to the amount Borrower owes or collect the fee separately.

2.5.    **Joint and Several Liability**.  If more than one party signs this Agreement as Borrower, the obligations of each of them shall be joint and several regardless of the source of the collateral or the particular Borrower with which the obligation originated, and each Borrower waives any suretyship or other defenses that it might raise with respect to any other Borrower.

3. **Interest.** Interest shall be calculated on the basis of a 360-day year and for the actual number of days elapsed, unless such calculation would cause the effective rate of interest to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. In no event shall this Agreement be enforced in any way that permits Lender to charge or collect interest or late charges in excess of the maximum lawful rate. In such event, Borrower agrees that Lender shall not be subject to any penalties for contracting for or collecting interest or late charges in excess of the maximum lawful rate.  Notwithstanding anything to the contrary in this Agreement or any related writing, all agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by Lender exceed the maximum amount permissible under applicable law.  The right to accelerate maturity of sums due under this Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration.  If, from any circumstances whatsoever, interest would otherwise be payable to Lender in excess of the maximum lawful amount, the interest payable to Lender shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Lender shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof (or due under any other agreement) and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal hereof (or due under any other agreement) such excess shall be refunded to Borrower, if allowed by applicable law.  All interest paid or agreed to be paid to Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon (or due under any other agreement) for such full period shall not exceed the maximum amount permitted by applicable law.  This paragraph shall control all agreements between Borrower and Lender.

4. **Prepayment.** As a material inducement to Lender to advance funds or otherwise provide financial accommodations to or for the benefit of Borrower, and or in consideration of Lender having previously done so, it is agreed that Borrower shall not unless otherwise required by law, have any right to voluntarily prepay any indebtedness for borrowed money now or hereafter owing to Lender; provided however that Borrower may, subject to the terms and conditions contained herein, have the privilege of voluntarily prepaying the obligation set forth in paragraph 1 of this Agreement in part or full at any time, provided, Borrower shall: (i) give five (5) days' prior written notice to Lender specifying the date and amount of any proposed voluntary prepayment and the indebtedness being voluntarily prepaid, and (ii) prepay a minimum amount of $10,000 or greater, and (iii) pay the amount specified in such voluntary prepayment notice, in good funds, on the date specified in such notice, and (iv) simultaneously pay, in good funds, all principal, interest, late charges, and other charges accrued and/or due to Lender through the date of any such voluntary prepayment, and (v) simultaneously pay a prepayment premium equal to the product of .20% of the principal amount then being voluntarily prepaid multiplied by the number of whole or partial calendar months between the date of the voluntary prepayment and the scheduled final maturity date, but in no event shall such amount exceed the maximum amount permitted by applicable law.  Any voluntary partial prepayment shall be applied to the scheduled installment(s) of the indebtedness in the reverse order of their respective maturities, so that the amount and due date of only the latest maturing installment(s) shall be affected thereby and unless Lender agrees otherwise in writing, Borrower may not skip payments.  The principal amount of any voluntary partial prepayment shall be applied as determined by Lender in its sole and absolute discretion.  To the extent permitted by applicable law, if Lender accelerates the maturity of sums due under this Agreement as a result of Borrower's default, Lender has the right to charge Borrower, and Borrower agrees to pay Lender, in addition to any other remedy, liquidated damages in an amount equal to the product of .20% of the accelerated unpaid principal balance due under this Agreement multiplied by the number of whole or

Page 2 of 13

partial calendar months between the date of the default and the scheduled final maturity date of this Agreement, but in no event shall such amount exceed the maximum amount permitted by applicable law. Lender and Borrower covenant and agree to take all such actions and to execute all such documents as may be desirable to implement the provisions of this Agreement fully and effectively.

5. **Disclaimer.**    **THIS AGREEMENT IS A LOAN AND SECURITY AGREEMENT. BORROWER ACKNOWLEDGES THAT THE EQUIPMENT (AS DEFINED HEREIN BELOW) HAS BEEN OR WILL BE SELECTED AND ACQUIRED SOLELY BY BORROWER AND THAT LENDER MAKES NO REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY OR FITNESS OF THE EQUIPMENT (AS DEFINED HEREIN BELOW) FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED. BORROWER'S OBLIGATIONS HEREUNDER ARE ABSOLUTE AND UNCONDITIONAL.**

6. **Collateral.** The goods, chattels and property listed on <u>Schedule A</u> hereto (hereinafter referred to as the "Equipment") and any and all accounts, accounts receivable, chattel paper, electronic chattel paper, collateral, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, securities entitlements, deposit accounts, investment property and all other property of whatever nature and kind, wherever located, now owned or hereafter acquired by Borrower, or in which Borrower now or hereafter has any right or interest in, and all attachments, accessories, accessions, substitutions, replacements, replacement parts, additions, software and software upgrades, including, without limitation, all property listed on any schedule to any agreement between the parties, and all cash and non-cash proceeds (including rental proceeds, insurance proceeds, accounts and chattel paper and/or electronic chattel paper arising out of or related to the sale, lease, rental or other disposition thereof) of and to all of the foregoing and is hereby collectively defined and referred to herein as the "<u>Collateral</u>" for all purposes. Borrower represents that the Collateral (without exception) shall be used exclusively for commercial business purposes and operations and not for personal, family or household purposes.

7. **Security Interests.** In consideration of Lender entering into this Agreement, Borrower hereby pledges, conveys, assigns and grants to Lender a security interest/lien in and to the Collateral to Lender and to its successors and assigns. The word "Lender" includes the subsidiaries, affiliates, heirs, successors, assigns and transferees. The security interest granted herein is to secure payment of any and all liabilities or obligations of Borrower to Lender, i) whether previously, contemporaneously or subsequently incurred or created, ii) whether joint or several, direct or indirect, absolute or contingent, matured or unmatured, secured or unsecured, heretofore arising, now existing or hereafter arising, iii) without reduction by reason of any claim, defense, set-off, abatement, offset, counterclaim or recoupment, and iv) whether under this Agreement or under any other writing between Borrower and Lender including but not limited to (a) any and all loans, advances, guaranties, notes, security agreements, lease agreements, rental agreements, bailment agreements, loan and security agreements, extensions of credit, endorsements, benefits and financial accommodations, or payments, previously, now or hereafter made, granted or extended by Lender to or on account of Borrower or which Lender has or may, grant or extend to or for the account of Borrower including the obligations to make payments hereunder; (b) any and all interest, commissions, obligations, liabilities, indebtedness, charges, late charges, interest, attorneys' fees and costs and expenses hereto and/or hereafter chargeable against Borrower by Lender or owing by Borrower to Lender or upon which Borrower may be and/or has become liable as endorser or guarantor; (c) all obligations and/or indebtedness of any and every kind of Borrower to Lender or any affiliate of Lender whether direct or indirect, whether contingent or absolute, whether matured or unmatured and whether now or hereafter arising, existing, incurred, contracted or owing to Lender in the future or acquired or to be acquired by Lender by one or more assignments, transfers or otherwise, including but not limited to amounts due upon any agreement or other obligations, given to or received by Lender or any affiliate directly from Borrower or by way of assignment from any one or more third parties and whether or not presently contemplated by the parties and (d) any and all extensions, renewals, amendments, rewrites, increases or modifications of any of the foregoing (all hereinafter called the "<u>Obligations</u>" and/or the "<u>Liabilities</u>"). Borrower hereby authorizes Lender to file and/or re-file any financing statement(s) and to be named as lienholder on any vehicle title(s) needed to perfect Lender's security interest in the Collateral, including, without limitation, any fixture filings and any amendments and continuation statements thereto pursuant to the Uniform Commercial Code then in effect (hereinafter referred to as the "<u>Code</u>"), in form satisfactory to Lender, and Borrower shall pay the cost of perfecting Lender's security interest in the Collateral as is deemed by Lender to be necessary or desirable.

Triumph LSA 1 6C1001 v02.00                                                                                                          Copyright 2015

8. **Representations and Warranties.** Borrower represents and warrants that:

8.1.   Borrower has the lawful and organizational power and authority to own its assets and to conduct the business in which it is engaged and is duly authorized and empowered to enter into this Agreement, to perform hereunder and to execute this Agreement as its legal, valid and binding obligation.

8.2.   Borrower is duly existing and in good standing in its state of formation and qualified and licensed to do business in, and in good standing in, any state in which the conduct of its business or its ownership of property requires that it be qualified. Except as specifically disclosed in writing to Lender, Borrower (i) has not been known as or used any corporate, fictitious or trade names or (ii) has not been the surviving corporation of a merger or consolidation or acquired all or substantially all of the assets of any person.

8.3.   This Agreement and the other agreements, instruments and documents executed herewith do not and will not (a) violate any provisions of the articles of incorporation or formation, bylaws, operating agreement or other analogous governing documents of Borrower, or any contract, agreement, law, regulation, order, injunction, judgment, decree or writ to which Borrower is subject, (b) result in the creation or imposition of any lien upon any Collateral of Borrower, other than those contemplated hereby, (c) constitute or result in a default under any agreement, bond or indenture by which Borrower is bound or in which any of its property is subject or materially and adversely affects its ability to perform its obligations under this Agreement hereunder, or (d) requires the consent or approval of any other person or entity, including without limitation, any regulatory authority or governmental body of or within the United States.

8.4.   All financial statements and information relating to Borrower which have been furnished by Borrower to Lender have been prepared from the books and records of Borrower, accurately reflect Borrower's financial condition for the time period covered thereby, and are true, correct and complete in all material respects, and there have been no material adverse changes in the condition (financial or otherwise) or prospects of Borrower since submission of the loan application.

8.5.   Borrower has good, marketable and indefeasible title to its properties and assets reflected as being owned by it on any balance sheet of Borrower submitted to Lender as of the date thereof. Except for (i) the security interest granted to Lender under the Agreement and (ii) any other security interest previously disclosed by Borrower to Lender in writing, Borrower is the owner of the Collateral, has good and marketable title thereto free and clear from any adverse lien, security interest or encumbrance. Notwithstanding the foregoing, Borrower may not at any time pledge a security interest/lien to any party other than to Lender on, in or to any of the Equipment or the Collateral.

8.6.   Borrower has filed all tax returns and reports required to be filed and has paid all taxes, assessments, fees and other governmental charges levied upon it.

8.7.   Borrower is not in breach of or in default under any loan agreement, indenture, bond, agreement or other evidence of indebtedness, or any other material agreement or any court order, injunction or decree or any lien, statute, rule or regulation. Borrower's properties are and will continue to be in compliance with all federal, state and local laws, rules and regulations, and all orders of any federal, state or local legislative, administrative or judicial body or official, except to the extent the failure to so comply would not have a material adverse effect on Borrower. Borrower has obtained and will continue to maintain all permits, approvals, authorizations and licenses necessary to conduct its business as presently conducted, except to the extent the failure to have such permits, approvals, authorizations or licenses would not have a material adverse effect on Borrower.

8.8.   Except as disclosed to Lender in writing, there is no litigation, legal or administrative proceeding, investigation or other action of any nature pending, or to the knowledge of Borrower, threatened against or affecting Borrower which involves the possibility of any judgment or liability not fully covered by insurance, and which may adversely affect the business or the properties of Borrower or its ability to carry on business as now conducted or would adversely affect the ability of Borrower to satisfy its obligations under the Agreement.

8.9.   None of the preprinted text of this Agreement has been altered, modified, or stricken by Borrower or anyone else.

8.10.   Borrower or its authorized representative properly executed this Agreement in Borrower's name and all signatures on this Agreement are genuine.

8.11.   Borrower acknowledges and agrees that its obligations due hereunder are absolutely and unconditionally due and owing to Lender or its successors and assigns without notice or demand and there are no defenses, claims,

Page 4 of 13

                                      Copyright 2015

counterclaims, causes of action, abatements, offsets or set-offs with respect to this Agreement and that this Agreement is fully enforceable against the Borrower. Borrower's obligation to pay the installments and other payments due hereunder shall be absolute and unconditional and shall not be affected by reason of (i) any defect in, lack of fitness for use of, damage to, loss of possession or use of or destruction of, all or any of the Collateral or Equipment, and/or (ii) the prohibition or other restriction against Borrower's use of said Collateral or Equipment, and/or (iii) any other cause, it being the agreement of the parties that this Agreement and any other amount payable by Borrower hereunder shall continue to be payable in all events in the manner and at the times provided herein or in any amendment or extension executed by the parties.

9. **Covenants by Borrower.** Borrower agrees:

9.1.    Borrower will not amend its certificate or articles of incorporation, formation, or partnership agreement (as applicable), its bylaws or operating agreement or otherwise change its legal name or structure, or consolidate with or merge into or acquire any person or entity, or permit any other person or entity to consolidate with or merge into or acquire Borrower or acquire the stock of any person or entity or form any subsidiary, without prior approval of Lender or permit any material change to be made in the character of its business as conducted as of the date hereof.

9.2.    Borrower will maintain its legal existence, rights and franchises and observe and comply with all applicable laws, statutes, codes, acts, ordinances, judgments, injunctions, rules, regulations, certificates, franchises, permits and licenses of all federal, state, county, municipal and other governmental authorities. Borrower agrees that it will not change the State where it was incorporated or formed or otherwise, nor change its name or address, without providing Lender with sixty (60) days prior written notice.

9.3.    Borrower shall pay and promptly file all tax returns and reports required to be filed and pay when due all taxes (including but not limited to personal property taxes), assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Collateral or for its use or operation or upon this Agreement or upon any instruments evidencing the Obligations.

9.4.    Borrower shall use the Collateral for commercial and business purposes only and operate it by qualified personnel in accordance with applicable manufacturers' and regulatory maintenance and performance standards. Borrower shall adhere to reasonable practices for Borrower's industry and the type of Collateral. Borrower shall keep the Collateral (a) free from any adverse lien or encumbrance (and shall promptly notify Lender of any attachment of any such lien or any seizure or levy), (b) in good working order, condition and repair and shall not waste or destroy the Collateral or any part thereof and (c) appropriately protected from the elements, and shall furnish all required parts and servicing (including any contract service necessary to maintain the benefit of any warranty of the manufacturer). Borrower shall not use the Collateral in violation of any statute, ordinance, regulation or order. Lender may examine and inspect the Collateral and any and all books and records of Borrower during business hours at any time and such right of inspection shall include the right to copy Borrower's books and records and to converse with Borrower's officers, employees, agents, and independent accountants.

9.5.    Borrower shall not sell, lease, assign, transfer or otherwise dispose of (i) the Collateral, except as otherwise specifically permitted by the Agreement, or (ii) all or any substantial part of its assets, without the prior written consent of Lender.

9.6.    The Collateral shall be kept primarily at Borrower's address listed in this Agreement, or listed on any Schedule(s) hereto (unless the Collateral is mobile, in which case it may be moved in the ordinary course of business), and Borrower shall give prompt written notice to Lender of any change in the location(s) of the Collateral. Notwithstanding the foregoing, the Collateral shall not be moved outside the United States of America without Lender's prior written consent.

9.7.    Borrower shall not permit the Collateral to become attached to real estate in such a way that it would be considered part of the realty or designated a "fixture." Notwithstanding any presumption of applicable law, and irrespective of any manner of attachment, the Collateral shall not be deemed real property but shall retain its character as personal property. However, Borrower shall, at the option of Lender, furnish the Lender with waiver(s) of any interest in the Collateral in recordable form, signed by all persons having an interest in the real estate where the Collateral may be located, which is or might be deemed to be prior to Lender's security interest.

9.8.    Borrower shall keep the Collateral free and clear of any lien, security interest or encumbrance (except for the security interest/lien granted hereunder to Lender) and shall not sell, lease, assign (by operation of law or

                                                                                    Copyright 2015

otherwise) exchange or otherwise dispose of any of the Collateral, except as expressly permitted herein. Borrower shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein. At the request of Lender, Borrower shall execute, acknowledge and deliver to Lender any document or instrument required by Lender to further the purposes of the Agreement. If any of the Collateral is subject to certificate of title law, Borrower will cause Lender's security interest/lien to be noted on such certificate of title and promptly deliver such certificate to Lender.

10. **Financial Statements.** Borrower shall furnish to Lender such financial statements, income statements, balance sheets, statements of cash flow, income tax returns, operating statements and other financial information as requested by Lender in its sole and absolute discretion. Borrower and any Guarantor agrees that any financial statements or other nonpublic information which Borrower or any Guarantor provides to Lender may be disclosed by Lender for legitimate business purposes to Lender's officers, directors, employees, agents, affiliates, attorneys, advisors, recourse providers, prospective assignees or participants, auditors, regulators or other parties pursuant to law.

11. **Insurance.** Borrower shall maintain and will continue to maintain with financially sound and reputable insurers, insurance with respect to the Collateral against all risks of loss or damage from every cause and other risks with such coverage and containing such terms, in such form, for such periods and written by such companies as shall be satisfactory to Lender. Furthermore, Borrower shall furnish to Lender appropriate additional insured endorsements and/or lender loss payable endorsements in form and substance satisfactory to Lender, naming Lender as loss payee as its interests may appear, and providing (a) for not less than the full replacement value as determined by Lender in its sole discretion and shall carry liability and property damage insurance covering the Equipment and ensure that all proceeds thereunder shall be payable to Lender (the proceeds of such insurance, at the option of Lender, shall be applied toward the replacement, repair or applied to reduce the indebtedness of Borrower to Lender), (b) no such insurance shall be affected by any act or neglect of the insured or owner of the property described in such policy, and (c) that such policy and loss payable clauses may not be cancelled, amended or terminated unless at least thirty (30) days' prior written notice is given to Lender, and Borrower shall ensure that the policies reflect such information. Upon request of Lender, Borrower will furnish or cause to be furnished to Lender from time to time certificates or other evidence satisfactory to Lender of compliance with the foregoing insurance provisions as well as a summary of the insurance coverage of Borrower and the Subsidiaries in form and substance satisfactory to Lender and, if requested, will furnish Lender copies of the applicable policies.

12. **Power of Attorney.** BORROWER HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE, DESIGNEE OR ASSIGNS OF LENDER, AS BORROWER'S ATTORNEY-IN-FACT TO, IN BORROWER'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE COLLATERAL; (b) PREPARE, SUBMIT, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OF RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY COLLATERAL THAT SECURES OR THAT MAY SECURE THE INDEBTEDNESS OF BORROWER TO LENDER AND (c) ENDORSE BORROWER'S NAME ON ANY REMITTANCE, CHECK OR DRAFT REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE COLLATERAL OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE COLLATERAL. THIS POWER IS COUPLED WITH AN INTEREST AND IS IRREVOCABLE AS LONG AS THE INDEBTEDNESS HEREUNDER REMAINS UNPAID.

13. **Events of Default.** The occurrence of any one or more of the following events shall constitute an "Event of Default": (i) Borrower fails to promptly pay any payment required hereunder on or before the due date of such payment including but not limited to those identified in paragraph 1 above, or in any amendment or extension agreement entered into between the parties; (ii) Borrower or any guarantor shall (a) fail to pay any indebtedness for borrowed money of the Borrower or such Guarantor, or any interest or premium thereon, when due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise), or (b) fail to perform any term, covenant, or condition on its part to be performed under any agreement or instrument relating to such indebtedness, or if any such indebtedness shall be declared to be due or payable or required to be prepaid (other than by a regularly scheduled required prepayment) prior to the stated maturity thereof, or (c) default under any other agreement for borrowed money, or (d) fail to perform any of the other obligations required to be performed by Borrower or Guarantor hereunder or under any Schedule, amendment, or documents executed in connection herewith or any other agreements between the parties, or if Borrower or any Guarantor defaults in the payment or performance of any other obligations due and owing to Lender or its affiliates, or (e) fails to comply with any representation, warranty or covenants

                                                                                Copyright 2015

contained herein or in any other agreement between the parties, or (iii) the death of Borrower or any Guarantor, if a natural person, or the dissolution of Borrower or any Guarantor, if a business organization, or (iv) the filing of any petition or complaint under the federal Bankruptcy Code or other federal or state acts of similar nature, by or against Borrower, or an assignment for the benefit of creditors by Borrower, or (v) an application for or the appointment of a receiver, trustee or conservator, voluntary or involuntary, by or against Borrower or for any substantial assets of Borrower, or (vi) insolvency of Borrower under either federal or state law or applicable principles of equity, or (vii) entry of judgment, issuance of any garnishment or attachment, or filing of any lien, claim or government attachment against the Collateral or which, in Lender's sole discretion, might impair the Collateral or the failure to pay, including without limitation, any taxes, liens, mechanics liens, warehouseman's liens, or (viii) any representation, covenant or warranty made by Borrower herein or in any other agreement between the parties or in any statement given to Lender shall be materially untrue or the determination by Lender that a material misrepresentation of fact has been made by Borrower in this Agreement or in any writing supplementary or ancillary hereto, or (ix) a determination by Lender that Borrower has suffered a material adverse change in its condition (financial or otherwise), business or operations from the date of this Agreement and/or Lender in good faith believes that the prospect of payment or performance of any of the obligations under this Agreement is impaired and/or Borrower or Guarantors affairs so change as to in Lender's opinion, increase the credit risk involved and Lender thereby becomes insecure as to the performance of this Agreement or any other agreement between the parties, or (x) any actual or anticipated revocation, nonrenewal or termination of a guarantee, letter of credit, surety bond or other instrument issued for the benefit of Lender as additional security for the Obligations, or (xi) any unauthorized filing by Borrower of a termination statement for any financing statement or other recorded instrument filed by Lender, or (xii) a change in the management, operations, ownership of stock or membership units or control of Borrower; or Borrower sells all or substantially all of its stock or partnership or membership interests; or Borrower sells all or substantially all of its assets or consolidates with or merges into any other entity; or its stockholders, partners or members sell all or substantially all of their stock or partnership or membership interests, or (xiii) Lender at any time deems the security afforded by this Agreement unsafe, inadequate or at any risk or any of the Collateral is or becomes in danger of concealment, transfer, sale, assignment, hypothecation or misappropriation, or (xiv) the filing or imposition of any levy, execution or attachment, against Borrower or any guarantor that is not released within sixty (60) hours, or (xv) Borrower shall incur, create, assume, cause or suffer to exist any mortgage, deed of trust, trust, lien, security interest, pledge, hypothecation, other encumbrance (except Lender's security interest), or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral or any of Lender's security interests under this Agreement or any of the Obligations, or (xvi) Borrower shall sell, transfer, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral, or (xvii) failure of Borrower a) to provide Lender with proof of insurance on the Collateral and in which names Lender as loss payee or b) to obtain or maintain insurance on the Collateral, all of the foregoing in a form and amounts satisfactory to Lender in its sole discretion, or (xviii) any of the Obligations, this Agreement, the security interest granted herein or any provision hereof for any reason attributable to Borrower, ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Borrower or Borrower shall deny that it has any further liability or obligation hereunder, or (xix) Borrower defaults in the prompt payment, performance or fulfillment of any obligations of any kind or nature to any other party, or (xx) Borrower or any Guarantor ceases to do business, or (xxi) a judgment is entered against Borrower or any Guarantor.

14. **Remedies.** Upon the occurrence of any default or Event of Default, or in the event of a default in the payment of any amount when due, or in the event of a default in the performance or any nonperformance of any obligation due and owing under this Agreement or any Obligations of Borrower to Lender: (i) all Liabilities of Borrower shall, at the option of Lender, become immediately due and payable and Lender may accelerate the maturity of the entire unpaid indebtedness and declare the entire indebtedness under all or any part of the Obligations to be at once due and immediately payable, whereupon the entire unpaid indebtedness shall become immediately due and payable without notice or demand. The right to accelerate maturity of sums due under this Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration, and (ii) Lender shall have and may exercise all of the rights and remedies granted to a secured party under the Code, and all other rights and remedies available to creditors at law or in equity and Lender may sue to enforce Borrower's performance hereunder, or may exercise any other remedy then available to Lender permitted at law or in equity whether or not stated herein and whether stated in this paragraph or any other paragraph contained in the Agreement or any other agreement between the parties, and (iii) Lender shall have the right, immediately, and without notice or other action, to set-off against any of Borrower's liabilities to Lender, any money owed by Lender in any capacity to Borrower, whether or not due, and (iv) Lender is hereby authorized and empowered, with or without the aid of any person or persons, to enter any premises where any of the Collateral or any part thereof is or may be located, and to assemble and/or remove the Collateral

Page 7 of 13

                                                                           Copyright 2015

and/or to render the Collateral unusable and may take possession of all or part of the Collateral, at any time, wherever the Collateral may be and Lender may proceed with or without judicial process to take possession of all or any part of the Collateral, and (v) Borrower agrees that Lender may enter any premises, with or without process of law, voluntarily or involuntarily, without notice, demand or legal process (Borrower, if permitted by applicable law, hereby waiving any right to notice or a hearing) and search for the Collateral or any part thereof, and Lender may repossess/take possession of, remove, and/or keep and store the Collateral on said premises until sold, without liability for trespass nor charge for storage, all without liability to Borrower arising out of such entry, taking possession or removal, or using premises to store or show the Collateral for sale or other disposition without charge. Borrower shall do everything necessary to make same available to Lender (including, without limitation, assembling the Collateral, delivering and making it available to Lender at a place designated by Lender which is reasonably convenient to Borrower and Lender), and (vi) Borrower agrees to immediately deliver possession of the Collateral to Lender, and agrees to assign, transfer and deliver at any time the whole or any portion of the Collateral or any rights or interest therein in accordance with the Code and other applicable law without limiting the scope of Lender's rights thereunder, and (vii) Subject to applicable law, Lender may sell the Collateral at public or private sale, or retain the Collateral in full or partial satisfaction of the indebtedness due to Lender or dispose of the Collateral in any other commercially reasonable manner and, at the option of Lender, in bulk or in individual units or both and with or without having the Collateral at the sale or other disposition, all free and clear of any claims or rights of Borrower and Borrower agrees that in case of sale or other disposition of the Collateral described above, or any portion thereof, Lender shall apply all proceeds first to all costs and expenses of disposition, including reasonable attorneys' fees and court costs and expenses, and then to Borrower's Obligations to Lender, and Borrower acknowledges and agrees that in any action or proceeding brought by Lender to obtain possession of any Collateral, Lender shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Borrower. If Borrower contests Lender's right to possession of any Collateral in any action or proceeding, Borrower shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Borrower's unpaid Obligations to Lender, whichever is less. Borrower agrees that upon the request of Lender, after any default, to segregate and hold all or any part of the Collateral in a fiduciary capacity and to adequately maintain, service and insure said property and to protect same from use and/or abuse, all without charge to Lender, such fiduciary duty to terminate only upon the actual delivery of the Collateral to Lender.  Lender may require Borrower to i) pay all accrued interest, late charges, collection charges, the default rate of interest, reimbursement for any and all costs and expenses incurred by Lender in enforcing any of the Obligations or this agreement and any reasonable attorneys' fees, ii) deliver any or all of the Collateral at Borrower's expense to such place or places as Lender may designate.  No failure or delay on the part of Lender to exercise any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.  Lender does not waive any right and/or remedy not exercised and retains all rights and remedies subject to applicable law.  The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies. The provisions of this Agreement and the rights and remedies granted to Lender herein shall be in addition to, and not in limitation of, those of any other agreement with Lender, the Code or any other evidence of any obligations held by Lender.

15. **Default Rate of Interest**. Upon the occurrence of an Event of Default any amounts due and to become due hereunder shall, without notice, bear interest, from the date such amounts are due until paid, at a rate (referred to as the "Default Rate or Delinquent Interest") which is the lesser of: (a) the maximum rate per annum which Lender is permitted by law to charge, or (b) eighteen percent (18%) per annum.

16. **Disposition; Expenses.** Borrower shall pay all reasonable expenses of Lender in obtaining possession, the disposition of and realizing upon the Collateral and collecting all liabilities of Borrower to Lender, including but not limited to any collection agency fee. In any interpretation or enforcement of the Agreement or any dispute related thereto or to the relationship between the parties, Borrower shall pay Lender's legal expenses and reasonable attorneys' fees, including any incurred before and at trial, on appeal, in any other proceeding or without any litigation being filed.  Any notification of a sale or other disposition of the Collateral or of other action by Lender required to be given by Lender, will be sufficient and deemed commercially reasonable if given personally, or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days prior to the day on which such sale or other disposition will be made or action taken.  In the event Lender sells all or part of the Collateral at public or private sale: (i) Lender shall not be required to refurbish, repair or otherwise incur any expenses in preparing the Collateral for sale but may sell its interest therein on an "AS-IS," "WHERE-IS" basis, if allowed by applicable law, and whether or not the items sold are in Lender's possession and present at the time and place of sale; (ii) Lender may, but shall not be obligated to,

Page 8 of 13

bid, credit bid or become the purchaser at any such sale, may or may not set any minimum bid, and may sell the Collateral in individual units or in bulk, including all of the Collateral sold in one lot as a whole; (iii) Borrower waives any and all rights of redemption from any such sale; (iv) Any public sale will be deemed commercially reasonable if notice thereof is provided to Borrower personally or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days before such sale, and sent to the address indicated above, and advertised in at least one newspaper of general circulation in the area of the sale (available on the newspaper's website in electronic format or in print) at least twice prior to the date of sale (and in the event there is no newspaper of general circulation, other electronic means to publicly notice the sale) and if upon terms of ten percent (10%) cash down with the balance payable in good funds within twenty-four (24) hours after the sale or such other more favorable terms as may be agreed to by Lender; (v) Any private sale shall be deemed commercially reasonable if notice thereof shall be provided to Borrower personally, or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days before the sale date stated therein sent to the address indicated above; (vi) The proceeds of any public or private sale shall be applied first to pay all costs, expenses and charges including but not limited to searching, locating, taking, removing, repossessing, keeping, advertising, marketing and selling the Collateral, reasonable attorneys' fees, costs and expenses, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions, and second to the payment, partly or entirely, of any of the Obligations in any manner as Lender may in its sole discretion elect, returning any excess to Borrower, if any, or such other party in interest as may be required by law. Notwithstanding the foregoing, the Borrower shall remain liable to Lender for any deficiency due and owing after application of the proceeds described above, plus late charges and Delinquent Interest and other amounts as provided herein. No action taken by Lender shall release Borrower from any of the Obligations or its obligations to Lender. Failure of Lender to comply with the terms listed in this paragraph shall not render any sale invalid or commercially unreasonable. Lender may without prior notice to or demand upon Borrower and with or without the exercise of any of Lender's other rights or remedies, apply toward the payment of Borrower's Obligations (at any time owing to Lender) any checks, drafts, agreements, balances, reserves, accounts and sums belonging to or owing to Borrower and coming into Lender's possession and for such purpose may endorse Borrower's name on any instrument or document payable to Borrower (whether for deposit, collection, discount or negotiation). Without notice to Borrower, Lender may make such applications or change applications of sums previously paid and/or to be paid to Lender, to such Obligations as Lender in its sole discretion may choose.

17. **Protection of the Collateral.**  At its option and in its sole discretion, Lender may discharge taxes, liens or other encumbrances at any time levied or placed on the Collateral, and may pay for insurance and maintenance and preservation of the Collateral. Borrower agrees to reimburse Lender on demand for any payment made or any expense incurred by Lender pursuant to the foregoing authorization and to pay a fee for additional monitoring incurred by Lender for Borrower's failure to maintain coverage or protection as provided herein. Any payments made by Lender shall be immediately due and payable by Borrower and shall bear interest at the Default Rate. Should Borrower fail to pay taxes or repairs relating to the Collateral or to maintain or obtain insurance, Lender shall have the right, but not the obligation, and without releasing Borrower from any obligation hereunder, to pay any sum due in connection therewith or to contest or compromise any encumbrance, charge, tax or lien and in exercising any such rights, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary.  If Lender shall pay for any of the foregoing, Borrower shall promptly reimburse Lender therefore on demand together with interest thereon at the Default Rate.

18. **Additional Security, Right to Set-off.**  Lender may proceed against and/or enforce any of its rights with respect to the Collateral in whatever order it may, in its sole discretion, deem appropriate. Any amount(s) received by Lender from whatever source may be applied by Lender to any of the Obligations and may be applied in such order of application, as Lender shall from time to time, in its sole discretion, elect. To the extent permitted by applicable law, Lender reserves a right of set-off in all of Borrower's accounts and deposit accounts with Lender (whether checking, savings, money market or some other account). This includes all accounts and deposit accounts Borrower holds jointly with someone else and all accounts and deposit accounts Borrower may open in the future. However, this does not include any IRA, Keogh accounts, or any trust account(s) whereupon set-off would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or set-off all sums owing on the indebtedness against any and all such accounts and/or deposit accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and set-off rights provided in this paragraph.

19. **Assignment.**  All covenants and agreements contained by or on behalf of Borrower or any Guarantor in this Agreement shall bind its successors and assigns or the heirs and personal representatives of any individual guarantor and shall inure to the benefit of Lender and its successors and assigns. Lender may sell or assign any and all right, title and interest it has under

this Agreement and in the Collateral, in whole or in part. Borrower shall, upon the direction of Lender: (a) execute all documents necessary to effectuate such assignment, and (b) pay directly and promptly to Lender's assignee, without abatement, deduction, offset, set-off, defenses, claims, counterclaims, or causes of action, all amounts which have become due under the assigned agreements. Lender's assignee shall have any and all rights, immunities and discretion of Lender hereunder and shall be entitled to exercise any remedies of Lender hereunder. All references herein to Lender shall include Lender's assignee (except that said assignee shall not be chargeable with any obligations or liabilities hereunder or in respect hereof). Borrower shall not assert against Lender's assignee any abatement, deduction, offset, defense, claim, counterclaim, causes of action or set-off which Borrower may assert it has against Lender. Borrower shall not assign or in any way dispose of all or any of its rights or obligations under this Agreement or enter into any agreement regarding all or any part of the Collateral without the prior written consent of Lender which may be withheld or denied, in its sole and absolute discretion, and any such purported assignment without the prior written consent of Lender by Borrower shall be null and void ab initio. In connection with the granting of such consent and the preparation of necessary documentation, a fee, determined by Lender in its sole and absolute discretion, shall be assessed. In the event that Lender has consented in writing, in its sole or absolute discretion, to any lease or license of the Collateral or any part thereof, Borrower hereby assigns and grants to Lender a security interest in any and all rights under any lease(s) or license(s), to secure all Obligations to Lender, and Borrower shall deliver to Lender the original of such lease(s).

20. **Entire Agreement**. **THIS AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENTS AND EMBODIES THE FINAL AND ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PRIOR AGREEMENTS AND UNDERSTANDINGS RELATING TO THE SAME SUBJECT MATTER HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.** Borrower acknowledges that no promises of any kind have been made by Lender or any third party to induce Borrower to execute this Agreement except to the extent expressly contained herein. Upon request, the parties will promptly execute and deliver such other and further documents and instruments, and shall do or take such other actions as may be reasonably required or appropriate, to cure any defects in the creation and issuance of this Agreement or in the perfection or preservation of the security interests contemplated herein.

21. **Amendment and Waiver**. No termination, waiver, amendment or modification of any of the terms or provisions of this Agreement or any obligation of Borrower to Lender shall be valid or binding unless set forth in a writing signed by a duly authorized officer of Lender, and then only to the extent specifically set forth therein. The waiver by Lender of any default hereunder or of any provisions hereof shall not discharge any party hereto from liability hereunder and such waiver shall be limited to the particular Event of Default and shall not operate as a waiver of any other or subsequent default.

22. **Attorneys' Fees: Expenses**. Borrower agrees to reimburse Lender on demand for the actual amount of all costs and expenses, including reasonable attorneys' fees, fees of auditors and accountants, and investigation expenses, UCC and tax lien searches, credit investigation fees, which Lender may incur in: (a) preparing, negotiating, closing, funding, amending, interpreting, administering and/or enforcing this Agreement and any documents prepared in connection herewith; (b) protecting, preserving or enforcing any lien, security interest or other right granted by Borrower to Lender or arising under applicable law, whether or not suit is brought; (c) in defense of Lender's interest or ownership rights in the Collateral including its priority; (d) in connection with any federal or state insolvency proceeding commenced by or against Borrower, or any subpoena or other legal process in any way relating to Borrower, including but not limited to those arising out of the automatic stay or seeking relief thereof, seeking dismissal or conversion of the bankruptcy proceeding or opposing confirmation of Borrower's plan thereunder. This provision shall survive termination of this Agreement. Notwithstanding the existence of any law, statute, rule or otherwise, in any jurisdiction which may provide Borrower with a right to attorneys' fees or costs, Borrower hereby waives any and all rights to seek such attorneys' fees or costs and Borrower agrees that Lender exclusively shall be entitled to indemnification and recovery of any and all reasonable attorneys' fees or costs in respect to any litigation based hereon, arising out of, or related hereto, whether under, or in connection with, this and/or any agreement executed in conjunction herewith, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of either party.

23. **Choice of Law; Venue and Jurisdiction**. **INTENDING THAT EACH AND EVERY PROVISION OF THIS AGREEMENT BE FULLY EFFECTIVE AND ENFORCEABLE ACCORDING TO ITS TERMS, THE PARTIES AGREE THAT ANY CLAIM, CONTROVERSY, DISPUTE, THE VALIDITY, ENFORCEABILITY AND EFFECTIVENESS OF EACH PROVISION HEREOF AND THE OBLIGATIONS OF THE BORROWER, AND**

Copyright 2015

**THE RIGHTS AND REMEDIES OF THE LENDER IN ANY WAY RELATED TO OR ARISING UNDER THIS AGREEMENT OR UNDER ONE OR MORE OBLIGATIONS OF BORROWER TO LENDER AND THE RELATIONSHIP OF THE PARTIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO THE CONFLICTS OF LAWS PRINCIPLES OR PROVISIONS THEREIN EXCEPT TO THE EXTENT THAT THE FEDERAL LAWS OF THE UNITED STATES OF AMERICA OTHERWISE PREEMPT TEXAS LAW, IN WHICH EVENT FEDERAL LAW SHALL CONTROL.** BORROWER HEREBY IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE STATE OF TEXAS IN CONNECTION WITH ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THE AGREEMENT OR THE OBLIGATIONS OR THE TRANSACTION CONTEMPLATED HEREBY. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Lender so elects, be instituted in any State or Federal Court sitting in Dallas County, Texas or, if none, any court sitting in the State of Texas (the "Acceptable Forums"). Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction and/or based upon venue or "forum non conveniens" in connection with any such action or proceeding. Should such proceeding be initiated in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum.

24. **Counterparts.** This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart by electronic transmission shall be effective as delivery of a manually executed counterpart, and any party delivering such an executed counterpart shall thereafter also promptly deliver a manually executed counterpart, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

25. **Notice.** All communications under or in connection with this Agreement (other than notices of public or private sale, which have notice provisions described in this Agreement) shall be in writing and personally delivered to an officer of the receiving party and/or shall be mailed by registered or certified mail, return receipt requested, postage prepaid, to the addresses of the parties listed in this Agreement or to such other addresses as each such party may in writing hereafter indicate in compliance with this Agreement. Any notice so addressed and mailed by registered or certified mail, return receipt requested, shall be deemed to be given to Borrower when so mailed and to Lender upon actual receipt by an authorized officer of Lender, and any notice so delivered in person shall be deemed to be given when actually received by, or receipt therefor is given by, an authorized officer of Borrower or Lender, as the case may be.

26. **DTPA Waiver.** Borrower acknowledges and agrees that Borrower has the knowledge and experience in financial and business matters to evaluate the merits and risks of the business transaction contemplated herein, is not in a disparate bargaining position relative to negotiating this Agreement and willingly waives and releases, without limitation, all rights and remedies associated with the Texas Deceptive Trade Practices Act ("DTPA") or such similar statute.

27. **Invalidity and Statute of Limitations.** In the event that any one or more of the provisions contained in this Agreement is/are in conflict with any statute, judicial decision or law and thus not valid or enforceable or is held, rendered or declared invalid, illegal or unenforceable in any respect by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision regarding the invalidity, illegality or unenforceability shall not affect, impair, invalidate or nullify the remainder of this Agreement or any other provision of this Agreement which shall remain in full force and effect. Borrower unconditionally and irrevocably stipulates and agrees that Borrower shall have no right to assert any claim, cause of action or counter claim, or to commence any action or proceeding against Lender as a result of, arising out of, or in any way related to the Agreement or the Collateral for the lesser of two years and one day after such claim, counter claim or cause of action shall accrue or any applicable statute of limitations. In no event shall the foregoing provision be read or interpreted to increase or lengthen any applicable statute of limitations.

28. **Survival of Agreements.** All representations and warranties of Borrower herein, and all covenants and agreements herein not fully performed before the effective date of this Agreement, shall survive such date.

29. **Renewal or Extension.** All provisions of this Agreement relating to the Obligations shall apply with equal force and effect to each, and to all documents and instruments hereinafter executed which in whole or in part represent a renewal, extension, increase, rewrite or rearrangement of any part of the Obligations. Any provision of this Agreement to be performed during the "term of this Agreement" "term hereof" or similar language, shall include any extension period. The

                                    Copyright 2015

loan documents exclusively represent the agreements between the parties and the intent of the parties thereto and supersede any prior proposal letters, commitment letters, oral covenants, oral agreements or negotiations.

30. **Cumulative Rights**. The rights and remedies of Lender under this Agreement shall be cumulative, and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any other right or remedy.

31. **Negotiation of Documents**. This Agreement has been negotiated by the parties at arm's length, each party represented by its own counsel, or waiving the right to be represented by counsel, and the fact that the documents have been prepared by Lender's counsel, after such negotiation, shall not be cause to construe any of such documents against Lender. Borrower acknowledges and agrees that this Agreement was deemed negotiated, approved, accepted and funded in Dallas, Texas. The Borrower has been advised and represents that it understands (i) that the Lender is a state savings bank in the State of Texas with its principal place of business in Dallas County, TX, (ii) that Lender negotiated, documented, closed and funded this Agreement in Dallas County, TX, (iii) that the documents will be maintained and stored in Dallas County, TX. The parties agree that any copy of this executed Agreement, including any photocopy, telecopy, electronic copy or facsimile thereof, shall have the same force and effect as though it were an original for all purposes, including but not limited to the enforcement of any of the terms and conditions thereof and the admissibility of such loan document in any legal or equitable proceeding.

32. **Debtor-Creditor Relationship**. None of the terms of this Agreement or of any other document executed in conjunction herewith or related hereto shall be deemed to give Lender the rights or powers to exercise control over the business or affairs of Borrower. The relationship between Borrower and Lender created by this Agreement is only that of debtor/creditor.

33. **Indemnification**. Borrower assumes liability for and agrees to defend, indemnify, protect, save and hold harmless Lender and its affiliates and their respective officers, directors, employees, agents, attorneys and advisors (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities, disbursements, costs and expenses, including, without limitation, reasonable attorneys' fees, court costs and expenses that may be incurred by or asserted or awarded against any Indemnified Party; i) arising out of or related to the Obligations, or the manufacture, financing, ownership, delivery, possession, use, operation, condition, or disposition of the Equipment by Borrower, including without limitation, any claim alleging latent and other defects, whether or not discoverable by Lender or Borrower and any other claim arising out of strict liability in tort, whether or not in either instance relating to an event occurring while Borrower remains obligated under this Agreement, and any claim for patent, trademark or copyright infringement, and/or ii) arising out of or related to any challenge to the nature or priority of Lender's security interest in/to the Collateral, except to the extent such claim, damage, loss, liability, cost or expenses is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this section applies, such indemnity shall be effective without prejudice to the survival of any other agreement of Borrower hereunder, and the agreements and obligations of Borrower contained in this section shall survive the payment in full of the indebtedness and all other amounts payable under this Agreement. To the maximum extent permitted by law, Borrower hereby knowingly, voluntarily and intentionally (and after each has consulted with its own attorney) irrevocably and unconditionally agrees that no claim may be made by Borrower against any Indemnified Party for any special, indirect, consequential or punitive damages in respect of any breach or wrongful conduct (whether the claim is based on contract, tort, common law or statute) arising out of, or related to, the transactions contemplated by this Agreement or any other Obligation or related documents, or any act, omission, or event occurring in connection herewith or therewith. In furtherance of the foregoing, Borrower hereby waives, releases and shall indemnify and hold harmless any and all Indemnified Parties from any such claims.

34. **Waiver of Trial by Jury**. **EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY FROM OR RELATING TO THEIR RELATIONSHIP, ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION AND/OR COUNTERCLAIM (a) ARISING UNDER THIS AGREEMENT OR ANY OTHER OBLIGATION, INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER OBLIGATION, INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO. THE PARTIES ACKNOWLEDGE THAT A RIGHT TO A JURY IS A CONSTITUTIONAL RIGHT, THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH**

Triumph LSA 1 6C1001 v02.00    Copyright 2015

INDEPENDENT COUNSEL, AND THAT THIS JURY WAIVER HAS BEEN ENTERED INTO KNOWINGLY AND VOLUNTARILY BY ALL PARTIES TO THIS AGREEMENT.  IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, CAUSE OF ACTION AND/OR COUNTERCLAIM SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

35. **Reversal of Payments**.  Lender shall have the continuing and exclusive right to apply, reverse and re-apply any and all payments to any portion of the Obligations in a manner consistent with the terms of this Agreement. To the extent Borrower makes a payment or payments to Lender, or Lender receives any payment or proceeds of any collateral for Borrower's benefit, which payment(s) or proceed(s) or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then, to the extent of such payment or proceeds received, the Obligations or party thereof intended to be satisfied shall be revived and continued in full force and effect, as if such payment or proceeds had not been received by Lender.

36. **Injunctive Relief**.  Borrower recognizes that, in the event Borrower fails to perform, observe or discharge any of its obligations or liabilities under this Agreement, any remedy at law may prove to be inadequate relief to Lender, therefore, Borrower agrees that if any default or Event of Default shall have occurred and be continuing, Lender shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages and without the posting of bond or other security in connection with such injunctive relief.

37. **Time of the Essence**.  Time is of the essence with respect to the payment and performance of Borrower's obligations under this Agreement and any other agreement between Borrower and Lender.

38. **Use of Headings**.  The headings used in each section of this Agreement are for ease of reference only.  Such headings are not intended to serve any descriptive, explanatory or other purpose and are of no legal or other significance whatsoever.  The terms "this Agreement," or "hereof," or "herein," or "hereunder," and any similar expressions refer to this Agreement and not to any particular paragraph or section or portion hereof.  Lender and Borrower shall collectively be referred to herein as the "parties," and each individually as a "party."

IN WITNESS WHEREOF, the parties have executed this Agreement on the Execution Date.

**LENDER:**

TBK BANK, SSB

By: _____

Name: _Amy M. Walker_____

Title: _VP_____

**BORROWER:**

DAVID G. DOOLE,
a MISSISSIPPI SOLE PROPRIETOR

By: _____

Name: ___DAVID G. DOOLE_____

Title: ___SOLE PROPRIETOR_____

Page 13 of 13

## SCHEDULE "A"

This schedule is attached to and becomes part of that certain LOAN AND SECURITY AGREEMENT dated <u>DECEMBER 9, 2016,</u> (hereinafter referred to as the "Agreement") between the undersigned parties listed below, the Borrower and TBK BANK, SSB, as Lender

### DESCRIPTION OF PROPERTY

| Manufacturer | Model and Specifications | Serial Number |
|---|---|---|
| CATERPILLAR | 303.5E2 MINI EXCAVATOR | JWY01961 |

and any and all additions, attachments, accessories, substitutions, replacements, replacement parts, software and software upgrades, and all cash and non cash proceeds including without limitation, any rental proceeds, insurance proceeds, accounts, accounts receivable, chattel paper and electronic chattel paper arising out of or related to the use, sale, lease, rental or other disposition thereof. The Borrower hereby consents and agrees that all of the terms, provisions and obligations contained in the Agreement are in full force and effect and are hereby ratified and confirmed.

**LENDER:**

TBK BANK, SSB

By

Name: Amy M. Walker

Title: VP

**BORROWER:**

DAVID G. DOOLE

By:

Name: DAVID G. DOOLE

Title: SOLE PROPRIETOR

## LOAN AND SECURITY AGREEMENT

**THIS LOAN AND SECURITY AGREEMENT** (hereinafter referred to as the "Agreement") is entered into as of **SEPTEMBER 12, 2019** (hereinafter referred to as the "Execution Date") by and between **TBK BANK, SSB**, a Texas State Savings Bank, having its principal place of business at 12700 Park Central Drive, Suite 1700, Dallas, TX 75251 (hereinafter referred to as "Lender") and the borrower(s) named below (hereinafter referred to individually and collectively, jointly and severally and interchangeably as "Borrower").

| | | | |
|---|---|---|---|
| Borrower: | DAVID G. DOOLE | Borrower: | FIBERLINK TECHNOLOGIES LLC |
| Address: | 152 MOORE CROSSING SOUTH | Address: | 151 FLOWER HOUSE LOOP |
| | BYHALIA, MS 38611 | | TROUTMAN, NC 28166 |

1. **Promise to Pay.** In consideration of Lender making a loan to Borrower subject to the terms and conditions set forth in this Agreement, Borrower absolutely and unconditionally promises to pay to the order of Lender the principal amount of **FOUR HUNDRED THIRTY FIVE THOUSAND FIVE HUNDRED NINETY FIVE AND 75/100** Dollars (**$435,595.75**), plus interest from the Execution Date on the unpaid principal balance outstanding from time to time at the rate of **SEVEN AND NINETY ONE HUNDREDTHS** percent (**7.90%**) per annum (but in no event shall such rate exceed any maximum permitted by applicable law). Principal and interest shall be paid in 48 consecutive monthly installments/payments (hereinafter referred to as "installments" or "payments") as follows:

| | | | |
|---|---|---|---|
| ___47___ | Installment(s), each in the amount of | $ __10,646.42__ | ; then |

a final installment, in the amount of the then unpaid principal balance plus all accrued and unpaid interest and any other amounts due and owing under and pursuant to this Agreement.

2. **Payment Terms.**

    2.1.    **Commencement Date/Application of Payments.** Consecutive monthly installments shall commence on the 16TH day of **OCTOBER, 2019**, and shall be due on the same day of each month thereafter until the indebtedness under this Agreement is paid in full. Each installment, at Lender's discretion may be applied first to accrued and unpaid interest and late charges if any, with the remainder applied to reduction of principal.

    2.2.    **Payment Direction.** All payments shall be made in lawful money of the United States at Lender's address listed herein or such other place, which Lender may designate in writing from time to time.

    2.3.    **Late Charges.** If any payment of the Obligations (as defined below) remains overdue for more than ten (10) days after the due date, Borrower hereby agrees to pay on demand, as a late charge, an amount equal to the lesser of (i) five percent (5%) of each such overdue installment, or (ii) the maximum percentage of any such overdue installment permitted by applicable law. Borrower agrees that the amount of such late charge represents a reasonable estimate of the cost to Lender of processing a delinquent payment and that the acceptance of any late charge shall not constitute a waiver of default with respect to the overdue installment or prevent Lender from exercising any of its other available rights and remedies.

    2.4.    **Returned Payments.** If Borrower's check (or payment in any other form) is returned unpaid or otherwise rejected for any reason Borrower agrees to pay Lender a fee (the "Returned Payment Fee") in the amount of $25.00, or such lesser amount as may be limited by law. Lender may add the fee to the amount Borrower owes or collect the fee separately.

    2.5.    **Joint and Several Liability.** If more than one party signs this Agreement as Borrower, the obligations of each of them shall be joint and several regardless of the source of the collateral or the particular Borrower with which the obligation originated, and each Borrower waives any suretyship or other defenses that it might raise with respect to any other Borrower.

3. **Interest.** Interest shall be calculated on the basis of a 360-day year and for the actual number of days elapsed, unless such calculation would cause the effective rate of interest to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. In no event shall this Agreement be enforced in any way that permits Lender to

Page **1** of **12**

Triumph LSA 1 601001 v02.00

**EXHIBIT**

tabbies

C

Copyright 2015

charge or collect interest or late charges in excess of the maximum lawful rate. In such event, Borrower agrees that Lender shall not be subject to any penalties for contracting for or collecting interest or late charges in excess of the maximum lawful rate. Notwithstanding anything to the contrary in this Agreement or any related writing, all agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by Lender exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstances whatsoever, interest would otherwise be payable to Lender in excess of the maximum lawful amount, the interest payable to Lender shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Lender shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof (or due under any other agreement) and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal hereof (or due under any other agreement) such excess shall be refunded to Borrower, if allowed by applicable law. All interest paid or agreed to be paid to Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon (or due under any other agreement) for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Borrower and Lender.

4. **Prepayment.** As a material inducement to Lender to advance funds or otherwise provide financial accommodations to or for the benefit of Borrower, and or in consideration of Lender having previously done so, it is agreed that Borrower shall not unless otherwise required by law, have any right to voluntarily prepay any indebtedness for borrowed money now or hereafter owing to Lender; provided however that Borrower may, subject to the terms and conditions contained herein, have the privilege of voluntarily prepaying the obligation set forth in paragraph 1 of this Agreement in part or full at any time, provided, Borrower shall: (i) give five (5) days' prior written notice to Lender specifying the date and amount of any proposed voluntary prepayment and the indebtedness being voluntarily prepaid, and (ii) prepay a minimum amount of $10,000 or greater, and (iii) pay the amount specified in such voluntary prepayment notice, in good funds, on the date specified in such notice, and (iv) simultaneously pay, in good funds, all principal, interest, late charges, and other charges accrued and/or due to Lender through the date of any such voluntary prepayment, and (v) simultaneously pay a prepayment premium equal to the product of .20% of the principal amount then being voluntarily prepaid multiplied by the number of whole or partial calendar months between the date of the voluntary prepayment and the scheduled final maturity date, but in no event shall such amount exceed the maximum amount permitted by applicable law. Any voluntary partial prepayment shall be applied to the scheduled installment(s) of the indebtedness in the reverse order of their respective maturities, so that the amount and due date of only the latest maturing installment(s) shall be affected thereby and unless Lender agrees otherwise in writing, Borrower may not skip payments. The principal amount of any voluntary partial prepayment shall be applied as determined by Lender in its sole and absolute discretion. To the extent permitted by applicable law, if Lender accelerates the maturity of sums due under this Agreement as a result of Borrower's default, Lender has the right to charge Borrower, and Borrower agrees to pay Lender, in addition to any other remedy, liquidated damages in an amount equal to the product of .20% of the accelerated unpaid principal balance due under this Agreement multiplied by the number of whole or partial calendar months between the date of the default and the scheduled final maturity date of this Agreement, but in no event shall such amount exceed the maximum amount permitted by applicable law. Lender and Borrower covenant and agree to take all such actions and to execute all such documents as may be desirable to implement the provisions of this Agreement fully and effectively.

5. **Disclaimer.** THIS AGREEMENT IS A LOAN AND SECURITY AGREEMENT. BORROWER ACKNOWLEDGES THAT THE EQUIPMENT (AS DEFINED HEREIN BELOW) HAS BEEN OR WILL BE SELECTED AND ACQUIRED SOLELY BY BORROWER AND THAT LENDER MAKES NO REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY OR FITNESS OF THE EQUIPMENT (AS DEFINED HEREIN BELOW) FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED. BORROWER'S OBLIGATIONS HEREUNDER ARE ABSOLUTE AND UNCONDITIONAL.

6. **Collateral.** The goods, chattels and property listed on Schedule A hereto (hereinafter referred to as the "Equipment") and any and all accounts, accounts receivable, chattel paper, electronic chattel paper, collateral, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, securities entitlements, deposit accounts, investment property and all other property of whatever nature and kind, wherever located, now owned or hereafter acquired by Borrower, or in which Borrower now or hereafter has any right or interest in, and all attachments, accessories, accessions, substitutions, replacements, replacement parts, additions, software and software upgrades, including, without limitation, all property listed on any schedule to any agreement between the parties, and all cash and non-cash proceeds (including rental proceeds, insurance proceeds, accounts and chattel paper and/or electronic chattel paper arising out of or related to the sale, lease, rental or other disposition thereof) of and to

Page 2 of 12

Copyright 2015

all of the foregoing and is hereby collectively defined and referred to herein as the "Collateral" for all purposes. Borrower represents that the Collateral (without exception) shall be used exclusively for commercial business purposes and operations and not for personal, family or household purposes.

7. **Security Interests.** In consideration of Lender entering into this Agreement, Borrower hereby pledges, conveys, assigns and grants to Lender a security interest/lien in and to the Collateral to Lender and to its successors and assigns. The word "Lender" includes the subsidiaries, affiliates, heirs, successors, assigns and transferees. The security interest granted herein is to secure payment of any and all liabilities or obligations of Borrower to Lender, i) whether previously, contemporaneously or subsequently incurred or created, ii) whether joint or several, direct or indirect, absolute or contingent, matured or unmatured, secured or unsecured, heretofore arising, now existing or hereafter arising, iii) without reduction by reason of any claim, defense, set-off, abatement, offset, counterclaim or recoupment, and iv) whether under this Agreement or under any other writing between Borrower and Lender including but not limited to (a) any and all loans, advances, guaranties, notes, security agreements, lease agreements, rental agreements, bailment agreements, loan and security agreements, extensions of credit, endorsements, benefits and financial accommodations, or payments, previously, now or hereafter made, granted or extended by Lender to or on account of Borrower or which Lender has or may, grant or extend to or for the account of Borrower including the obligations to make payments hereunder; (b) any and all interest, commissions, obligations, liabilities, indebtedness, charges, late charges, interest, attorneys' fees and costs and expenses hereto and/or hereafter chargeable against Borrower by Lender or owing by Borrower to Lender or upon which Borrower may be and/or has become liable as endorser or guarantor; (c) all obligations and/or indebtedness of any and every kind of Borrower to Lender or any affiliate of Lender whether direct or indirect, whether contingent or absolute, whether matured or unmatured and whether now or hereafter arising, existing, incurred, contracted or owing to Lender in the future or acquired or to be acquired by Lender by one or more assignments, transfers or otherwise, including but not limited to amounts due upon any agreement or other obligations, given to or received by Lender or any affiliate directly from Borrower or by way of assignment from any one or more third parties and whether or not presently contemplated by the parties and (d) any and all extensions, renewals, amendments, rewrites, increases or modifications of any of the foregoing (all hereinafter called the "Obligations" and/or the "Liabilities"). Borrower hereby authorizes Lender to file and/or re-file any financing statement(s) and to be named as lienholder on any vehicle title(s) needed to perfect Lender's security interest in the Collateral, including, without limitation, any fixture filings and any amendments and continuation statements thereto pursuant to the Uniform Commercial Code then in effect (hereinafter referred to as the "Code"), in form satisfactory to Lender, and Borrower shall pay the cost of perfecting Lender's security interest in the Collateral as is deemed by Lender to be necessary or desirable.

8. **Representations and Warranties.** Borrower represents and warrants that:

8.1.    Borrower has the lawful and organizational power and authority to own its assets and to conduct the business in which it is engaged and is duly authorized and empowered to enter into this Agreement, to perform hereunder and to execute this Agreement as its legal, valid and binding obligation.

8.2.    Borrower is duly existing and in good standing in its state of formation and qualified and licensed to do business in, and in good standing in, any state in which the conduct of its business or its ownership of property requires that it be qualified. Except as specifically disclosed in writing to Lender, Borrower (i) has not been known as or used any corporate, fictitious or trade names or (ii) has not been the surviving corporation of a merger or consolidation or acquired all or substantially all of the assets of any person.

8.3.    This Agreement and the other agreements, instruments and documents executed herewith do not and will not (a) violate any provisions of the articles of incorporation or formation, bylaws, operating agreement or other analogous governing documents of Borrower, or any contract, agreement, law, regulation, order, injunction, judgment, decree or writ to which Borrower is subject, (b) result in the creation or imposition of any lien upon any Collateral of Borrower, other than those contemplated hereby, (c) constitute or result in a default under any agreement, bond or indenture by which Borrower is bound or in which any of its property is subject or materially and adversely affects its ability to perform its obligations under this Agreement hereunder, or (d) requires the consent or approval of any other person or entity, including without limitation, any regulatory authority or governmental body of or within the United States.

8.4.    All financial statements and information relating to Borrower which have been furnished by Borrower to Lender have been prepared from the books and records of Borrower, accurately reflect Borrower's financial condition for the time period covered thereby, and are true, correct and complete in all material respects, and there have been no material adverse changes in the condition (financial or otherwise) or prospects of Borrower since submission of the loan application.

8.5.    Borrower has good, marketable and indefeasible title to its properties and assets reflected as being owned by it on any balance sheet of Borrower submitted to Lender as of the date thereof. Except for (i) the security interest granted to Lender under the Agreement and (ii) any other security interest previously disclosed by Borrower to Lender in writing, Borrower is the owner of the Collateral, has good and marketable title thereto free and clear from any adverse lien,

Page 3 of 12

Copyright 2015

security interest or encumbrance. Notwithstanding the foregoing, Borrower may not at any time pledge a security interest/lien to any party other than to Lender on, in or to any of the Equipment or the Collateral.

8.6.    Borrower has filed all tax returns and reports required to be filed and has paid all taxes, assessments, fees and other governmental charges levied upon it.

8.7.    Borrower is not in breach of or in default under any loan agreement, indenture, bond, agreement or other evidence of indebtedness, or any other material agreement or any court order, injunction or decree or any lien, statute, rule or regulation. Borrower's properties are and will continue to be in compliance with all federal, state and local laws, rules and regulations, and all orders of any federal, state or local legislative, administrative or judicial body or official, except to the extent the failure to so comply would not have a material adverse effect on Borrower. Borrower has obtained and will continue to maintain all permits, approvals, authorizations and licenses necessary to conduct its business as presently conducted, except to the extent the failure to have such permits, approvals, authorizations or licenses would not have a material adverse effect on Borrower.

8.8.    Except as disclosed to Lender in writing, there is no litigation, legal or administrative proceeding, investigation or other action of any nature pending, or to the knowledge of Borrower, threatened against or affecting Borrower which involves the possibility of any judgment or liability not fully covered by insurance, and which may adversely affect the business or the properties of Borrower or its ability to carry on business as now conducted or would adversely affect the ability of Borrower to satisfy its obligations under the Agreement.

8.9.    None of the preprinted text of this Agreement has been altered, modified, or stricken by Borrower or anyone else.

8.10.    Borrower or its authorized representative properly executed this Agreement in Borrower's name and all signatures on this Agreement are genuine.

8.11.    Borrower acknowledges and agrees that its obligations due hereunder are absolutely and unconditionally due and owing to Lender or its successors and assigns without notice or demand and there are no defenses, claims, counterclaims, causes of action, abatements, offsets or set-offs with respect to this Agreement and that this Agreement is fully enforceable against the Borrower. Borrower's obligation to pay the installments and other payments due hereunder shall be absolute and unconditional and shall not be affected by reason of (i) any defect in, lack of fitness for use of, damage to, loss of possession or use of or destruction of, all or any of the Collateral or Equipment, and/or (ii) the prohibition or other restriction against Borrower's use of said Collateral or Equipment, and/or (iii) any other cause, it being the agreement of the parties that this Agreement and any other amount payable by Borrower hereunder shall continue to be payable in all events in the manner and at the times provided herein or in any amendment or extension executed by the parties.

9.  **Covenants by Borrower.**  Borrower agrees:

9.1.    Borrower will not amend its certificate or articles of incorporation, formation, or partnership agreement (as applicable), its bylaws or operating agreement or otherwise change its legal name or structure, or consolidate with or merge into or acquire any person or entity, or permit any other person or entity to consolidate with or merge into or acquire Borrower or acquire the stock of any person or entity or form any subsidiary, without prior approval of Lender or permit any material change to be made in the character of its business as conducted as of the date hereof.

9.2.    Borrower will maintain its legal existence, rights and franchises and observe and comply with all applicable laws, statutes, codes, acts, ordinances, judgments, injunctions, rules, regulations, certificates, franchises, permits and licenses of all federal, state, county, municipal and other governmental authorities. Borrower agrees that it will not change the State where it was incorporated or formed or otherwise, nor change its name or address, without providing Lender with sixty (60) days prior written notice.

9.3.    Borrower shall pay and promptly file all tax returns and reports required to be filed and pay when due all taxes (including but not limited to personal property taxes), assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Collateral or for its use or operation or upon this Agreement or upon any instruments evidencing the Obligations.

9.4.    Borrower shall use the Collateral for commercial and business purposes only and operate it by qualified personnel in accordance with applicable manufacturers' and regulatory maintenance and performance standards. Borrower shall adhere to reasonable practices for Borrower's industry and the type of Collateral. Borrower shall keep the Collateral (a) free from any adverse lien or encumbrance (and shall promptly notify Lender of any attachment of any such lien or any seizure or levy), (b) in good working order, condition and repair and shall not waste or destroy the Collateral or any part thereof and (c) appropriately protected from the elements, and shall furnish all required parts and servicing (including any contract service necessary to maintain the benefit of any warranty of the manufacturer). Borrower shall not use the

Page 4 of 12

Copyright 2015

Collateral in violation of any statute, ordinance, regulation or order. Lender may examine and inspect the Collateral and any and all books and records of Borrower during business hours at any time and such right of inspection shall include the right to copy Borrower's books and records and to converse with Borrower's officers, employees, agents, and independent accountants.

9.5.  Borrower shall not sell, lease, assign, transfer or otherwise dispose of (i) the Collateral, except as otherwise specifically permitted by the Agreement, or (ii) all or any substantial part of its assets, without the prior written consent of Lender.

9.6.  The Collateral shall be kept primarily at Borrower's address listed in this Agreement, or listed on any Schedule(s) hereto (unless the Collateral is mobile, in which case it may be moved in the ordinary course of business), and Borrower shall give prompt written notice to Lender of any change in the location(s) of the Collateral. Notwithstanding the foregoing, the Collateral shall not be moved outside the United States of America without Lender's prior written consent.

9.7.  Borrower shall not permit the Collateral to become attached to real estate in such a way that it would be considered part of the realty or designated a "fixture." Notwithstanding any presumption of applicable law, and irrespective of any manner of attachment, the Collateral shall not be deemed real property but shall retain its character as personal property. However, Borrower shall, at the option of Lender, furnish the Lender with waiver(s) of any interest in the Collateral in recordable form, signed by all persons having an interest in the real estate where the Collateral may be located, which is or might be deemed to be prior to Lender's security interest.

9.8.  Borrower shall keep the Collateral free and clear of any lien, security interest or encumbrance (except for the security interest/lien granted hereunder to Lender) and shall not sell, lease, assign (by operation of law or otherwise) exchange or otherwise dispose of any of the Collateral, except as expressly permitted herein. Borrower shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein. At the request of Lender, Borrower shall execute, acknowledge and deliver to Lender any document or instrument required by Lender to further the purposes of the Agreement. If any of the Collateral is subject to certificate of title law, Borrower will cause Lender's security interest/lien to be noted on such certificate of title and promptly deliver such certificate to Lender.

10. **Financial Statements.** Borrower shall furnish to Lender such financial statements, income statements, balance sheets, statements of cash flow, income tax returns, operating statements and other financial information as requested by Lender in its sole and absolute discretion. Borrower and any Guarantor agrees that any financial statements or other nonpublic information which Borrower or any Guarantor provides to Lender may be disclosed by Lender for legitimate business purposes to Lender's officers, directors, employees, agents, affiliates, attorneys, advisors, recourse providers, prospective assignees or participants, auditors, regulators or other parties pursuant to law.

11. **Insurance.** Borrower shall maintain and will continue to maintain with financially sound and reputable insurers, insurance with respect to the Collateral against all risks of loss or damage from every cause and other risks with such coverage and containing such terms, in such form, for such periods and written by such companies as shall be satisfactory to Lender. Furthermore, Borrower shall furnish to Lender appropriate additional insured endorsements and/or lender loss payable endorsements in form and substance satisfactory to Lender, naming Lender as loss payee as its interests may appear, and providing (a) for not less than the full replacement value as determined by Lender in its sole discretion and shall carry liability and property damage insurance covering the Equipment and ensure that all proceeds thereunder shall be payable to Lender (the proceeds of such insurance, at the option of Lender, shall be applied toward the replacement, repair or applied to reduce the indebtedness of Borrower to Lender), (b) no such insurance shall be affected by any act or neglect of the insured or owner of the property described in such policy, and (c) that such policy and loss payable clauses may not be cancelled, amended or terminated unless at least thirty (30) days' prior written notice is given to Lender, and Borrower shall ensure that the policies reflect such information. Upon request of Lender, Borrower will furnish or cause to be furnished to Lender from time to time certificates or other evidence satisfactory to Lender of compliance with the foregoing insurance provisions as well as a summary of the insurance coverage of Borrower and the Subsidiaries in form and substance satisfactory to Lender and, if requested, will furnish Lender copies of the applicable policies.

12. **Power of Attorney.** BORROWER HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE, DESIGNEE OR ASSIGNS OF LENDER, AS BORROWER'S ATTORNEY-IN-FACT TO, IN BORROWER'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE COLLATERAL; (b) PREPARE, SUBMIT, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OF RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY COLLATERAL THAT SECURES OR THAT MAY SECURE THE INDEBTEDNESS OF BORROWER TO LENDER AND (c) ENDORSE BORROWER'S NAME ON ANY REMITTANCE, CHECK OR DRAFT REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE COLLATERAL OR THE

Page 5 of 12

Copyright 2015

PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE COLLATERAL. THIS POWER IS COUPLED WITH AN INTEREST AND IS IRREVOCABLE AS LONG AS THE INDEBTEDNESS HEREUNDER REMAINS UNPAID.

13. **Events of Default.**    The occurrence of any one or more of the following events shall constitute an "Event of Default": (i) Borrower fails to promptly pay any payment required hereunder on or before the due date of such payment including but not limited to those identified in paragraph 1 above, or in any amendment or extension agreement entered into between the parties; (ii) Borrower or any guarantor shall (a) fail to pay any indebtedness for borrowed money of the Borrower or such Guarantor, or any interest or premium thereon, when due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise), or (b) fail to perform any term, covenant, or condition on its part to be performed under any agreement or instrument relating to such indebtedness, or if any such indebtedness shall be declared to be due or payable or required to be prepaid (other than by a regularly scheduled required prepayment) prior to the stated maturity thereof, or (c) default under any other agreement for borrowed money, or (d) fail to perform any of the other obligations required to be performed by Borrower or Guarantor hereunder or under any Schedule, amendment, or documents executed in connection herewith or any other agreements between the parties, or if Borrower or any Guarantor defaults in the payment or performance of any other obligations due and owing to Lender or its affiliates, or (e) fails to comply with any representation, warranty or covenants contained herein or in any other agreement between the parties, or (iii) the death of Borrower or any Guarantor, if a natural person, or the dissolution of Borrower or any Guarantor, if a business organization, or (iv) the filing of any petition or complaint under the federal Bankruptcy Code or other federal or state acts of similar nature, by or against Borrower, or an assignment for the benefit of creditors by Borrower, or (v) an application for or the appointment of a receiver, trustee or conservator, voluntary or involuntary, by or against Borrower or for any substantial assets of Borrower, or (vi) insolvency of Borrower under either federal or state law or applicable principles of equity, or (vii) entry of judgment, issuance of any garnishment or attachment, or filing of any lien, claim or government attachment against the Collateral or which, in Lender's sole discretion, might impair the Collateral or the failure to pay, including without limitation, any taxes, liens, mechanics liens, warehouseman's liens, or (viii) any representation, covenant or warranty made by Borrower herein or in any other agreement between the parties or in any statement given to Lender shall be materially untrue or the determination by Lender that a material misrepresentation of fact has been made by Borrower in this Agreement or in any writing supplementary or ancillary hereto, or (ix) a determination by Lender that Borrower has suffered a material adverse change in its condition (financial or otherwise), business or operations from the date of this Agreement and/or Lender in good faith believes that the prospect of payment or performance of any of the obligations under this Agreement is impaired and/or Borrower or Guarantors affairs so change as to in Lender's opinion, increase the credit risk involved and Lender thereby becomes insecure as to the performance of this Agreement or any other agreement between the parties, or (x) any actual or anticipated revocation, nonrenewal or termination of a guarantee, letter of credit, surety bond or other instrument issued for the benefit of Lender as additional security for the Obligations, or (xi) any unauthorized filing by Borrower of a termination statement for any financing statement or other recorded instrument filed by Lender, or (xii) a change in the management, operations, ownership of stock or membership units or control of Borrower; or Borrower sells all or substantially all of its stock or partnership or membership interests; or Borrower sells all or substantially all of its assets or consolidates with or merges into any other entity; or its stockholders, partners or members sell all or substantially all of their stock or partnership or membership interests, or (xiii) Lender at any time deems the security afforded by this Agreement unsafe, inadequate or at any risk or any of the Collateral is or becomes in danger of concealment, transfer, sale, assignment, hypothecation or misappropriation, or (xiv) the filing or imposition of any levy, execution or attachment, against Borrower or any guarantor that is not released within sixty (60) hours, or (xv) Borrower shall incur, create, assume, cause or suffer to exist any mortgage, deed of trust, trust, lien, security interest, pledge, hypothecation, other encumbrance (except Lender's security interest), or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral or any of Lender's security interests under this Agreement or any of the Obligations, or (xvi) Borrower shall sell, transfer, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral, or (xvii) failure of Borrower a) to provide Lender with proof of insurance on the Collateral and in which names Lender as loss payee or b) to obtain or maintain insurance on the Collateral, all of the foregoing in a form and amounts satisfactory to Lender in its sole discretion, or (xviii) any of the Obligations, this Agreement, the security interest granted herein or any provision hereof for any reason attributable to Borrower, ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Borrower or Borrower shall deny that it has any further liability or obligation hereunder, or (xix) Borrower defaults in the prompt payment, performance or fulfillment of any obligations of any kind or nature to any other party, or (xx) Borrower or any Guarantor ceases to do business, or (xxi) a judgment is entered against Borrower or any Guarantor.

14. **Remedies.** Upon the occurrence of any default or Event of Default, or in the event of a default in the payment of any amount when due, or in the event of a default in the performance or any nonperformance of any obligation due and owing under this Agreement or any Obligations of Borrower to Lender: (i) all Liabilities of Borrower shall, at the option of Lender, become immediately due and payable and Lender may accelerate the maturity of the entire unpaid indebtedness and declare the entire indebtedness under all or any part of the Obligations to be at once due and immediately payable, whereupon the entire unpaid indebtedness shall become immediately due and payable without notice or demand. The right to accelerate maturity of sums due under this Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the

Page 6 of 12

Copyright 2015

acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration, and (ii) Lender shall have and may exercise all of the rights and remedies granted to a secured party under the Code, and all other rights and remedies available to creditors at law or in equity and Lender may sue to enforce Borrower's performance hereunder, or may exercise any other remedy then available to Lender permitted at law or in equity whether or not stated herein and whether stated in this paragraph or any other paragraph contained in the Agreement or any other agreement between the parties, and (iii) Lender shall have the right, immediately, and without notice or other action, to set-off against any of Borrower's liabilities to Lender, any money owed by Lender in any capacity to Borrower, whether or not due, and (iv) Lender is hereby authorized and empowered, with or without the aid of any person or persons, to enter any premises where any of the Collateral or any part thereof is or may be located, and to assemble and/or remove the Collateral and/or to render the Collateral unusable and may take possession of all or part of the Collateral, at any time, wherever the Collateral may be and Lender may proceed with or without judicial process to take possession of all or any part of the Collateral, and (v) Borrower agrees that Lender may enter any premises, with or without process of law, voluntarily or involuntarily, without notice, demand or legal process (Borrower, if permitted by applicable law, hereby waiving any right to notice or a hearing) and search for the Collateral or any part thereof, and Lender may repossess/take possession of, remove, and/or keep and store the Collateral on said premises until sold, without liability for trespass nor charge for storage, all without liability to Borrower arising out of such entry, taking possession or removal, or using premises to store or show the Collateral for sale or other disposition without charge. Borrower shall do everything necessary to make same available to Lender (including, without limitation, assembling the Collateral, delivering and making it available to Lender at a place designated by Lender which is reasonably convenient to Borrower and Lender), and (vi) Borrower agrees to immediately deliver possession of the Collateral to Lender, and agrees to assign, transfer and deliver at any time the whole or any portion of the Collateral or any rights or interest therein in accordance with the Code and other applicable law without limiting the scope of Lender's rights thereunder, and (vii) Subject to applicable law, Lender may sell the Collateral at public or private sale, or retain the Collateral in full or partial satisfaction of the indebtedness due to Lender or dispose of the Collateral in any other commercially reasonable manner and, at the option of Lender, in bulk or in individual units or both and with or without having the Collateral at the sale or other disposition, all free and clear of any claims or rights of Borrower and Borrower agrees that in case of sale or other disposition of the Collateral described above, or any portion thereof, Lender shall apply all proceeds first to all costs and expenses of disposition, including reasonable attorneys' fees and court costs and expenses, and then to Borrower's Obligations to Lender, and Borrower acknowledges and agrees that in any action or proceeding brought by Lender to obtain possession of any Collateral, Lender shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Borrower. If Borrower contests Lender's right to possession of any Collateral in any action or proceeding, Borrower shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Borrower's unpaid Obligations to Lender, whichever is less. Borrower agrees that upon the request of Lender, after any default, to segregate and hold all or any part of the Collateral in a fiduciary capacity and to adequately maintain, service and insure said property and to protect same from use and/or abuse, all without charge to Lender, such fiduciary duty to terminate only upon the actual delivery of the Collateral to Lender. Lender may require Borrower to i) pay all accrued interest, late charges, collection charges, the default rate of interest, reimbursement for any and all costs and expenses incurred by Lender in enforcing any of the Obligations or this agreement and any reasonable attorneys' fees, ii) deliver any or all of the Collateral at Borrower's expense to such place or places as Lender may designate. No failure or delay on the part of Lender to exercise any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy. Lender does not waive any right and/or remedy not exercised and retains all rights and remedies subject to applicable law. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies. The provisions of this Agreement and the rights and remedies granted to Lender herein shall be in addition to, and not in limitation of, those of any other agreement with Lender, the Code or any other evidence of any obligations held by Lender.

15. **Default Rate of Interest**. Upon the occurrence of an Event of Default any amounts due and to become due hereunder shall, without notice, bear interest, from the date such amounts are due until paid, at a rate (referred to as the "Default Rate or Delinquent Interest") which is the lesser of: (a) the maximum rate per annum which Lender is permitted by law to charge, or (b) eighteen percent (18%) per annum.

16. **Disposition; Expenses.** Borrower shall pay all reasonable expenses of Lender in obtaining possession, the disposition of and realizing upon the Collateral and collecting all liabilities of Borrower to Lender, including but not limited to any collection agency fee. In any interpretation or enforcement of the Agreement or any dispute related thereto or to the relationship between the parties, Borrower shall pay Lender's legal expenses and reasonable attorneys' fees, including any incurred before and at trial, on appeal, in any other proceeding or without any litigation being filed. Any notification of a sale or other disposition of the Collateral or of other action by Lender required to be given by Lender, will be sufficient and deemed commercially reasonable if given personally, or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days prior to the day on which such sale or other disposition will be made or action taken. In the event Lender sells

Page 7 of **12**

Copyright 2015

all or part of the Collateral at public or private sale: (i) Lender shall not be required to refurbish, repair or otherwise incur any expenses in preparing the Collateral for sale but may sell its interest therein on an "AS-IS," "WHERE-IS" basis, if allowed by applicable law, and whether or not the items sold are in Lender's possession and present at the time and place of sale; (ii) Lender may, but shall not be obligated to, bid, credit bid or become the purchaser at any such sale, may or may not set any minimum bid, and may sell the Collateral in individual units or in bulk, including all of the Collateral sold in one lot as a whole; (iii) Borrower waives any and all rights of redemption from any such sale; (iv) Any public sale will be deemed commercially reasonable if notice thereof is provided to Borrower personally or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days before such sale, and sent to the address indicated above, and advertised in at least one newspaper of general circulation in the area of the sale (available on the newspaper's website in electronic format or in print) at least twice prior to the date of sale (and in the event there is no newspaper of general circulation, other electronic means to publicly notice the sale) and if upon terms of ten percent (10%) cash down with the balance payable in good funds within twenty-four (24) hours after the sale or such other more favorable terms as may be agreed to by Lender; (v) Any private sale shall be deemed commercially reasonable if notice thereof shall be provided to Borrower personally, or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days before the sale date stated therein sent to the address indicated above; (vi) The proceeds of any public or private sale shall be applied first to pay all costs, expenses and charges including but not limited to searching, locating, taking, removing, repossessing, keeping, advertising, marketing and selling the Collateral, reasonable attorneys' fees, costs and expenses, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions, and second to the payment, partly or entirely, of any of the Obligations in any manner as Lender may in its sole discretion elect, returning any excess to Borrower, if any, or such other party in interest as may be required by law.  Notwithstanding the foregoing, the Borrower shall remain liable to Lender for any deficiency due and owing after application of the proceeds described above, plus late charges and Delinquent Interest and other amounts as provided herein. No action taken by Lender shall release Borrower from any of the Obligations or its obligations to Lender. Failure of Lender to comply with the terms listed in this paragraph shall not render any sale invalid or commercially unreasonable. Lender may without prior notice to or demand upon Borrower and with or without the exercise of any of Lender's other rights or remedies, apply toward the payment of Borrower's Obligations (at any time owing to Lender) any checks, drafts, agreements, balances, reserves, accounts and sums belonging to or owing to Borrower and coming into Lender's possession and for such purpose may endorse Borrower's name on any instrument or document payable to Borrower (whether for deposit, collection, discount or negotiation).  Without notice to Borrower, Lender may make such applications or change applications of sums previously paid and/or to be paid to Lender, to such Obligations as Lender in its sole discretion may choose.

17. **Protection of the Collateral.**  At its option and in its sole discretion, Lender may discharge taxes, liens or other encumbrances at any time levied or placed on the Collateral, and may pay for insurance and maintenance and preservation of the Collateral. Borrower agrees to reimburse Lender on demand for any payment made or any expense incurred by Lender pursuant to the foregoing authorization and to pay a fee for additional monitoring incurred by Lender for Borrower's failure to maintain coverage or protection as provided herein. Any payments made by Lender shall be immediately due and payable by Borrower and shall bear interest at the Default Rate.  Should Borrower fail to pay taxes or repairs relating to the Collateral or to maintain or obtain insurance, Lender shall have the right, but not the obligation, and without releasing Borrower from any obligation hereunder, to pay any sum due in connection therewith or to contest or compromise any encumbrance, charge, tax or lien and in exercising any such rights, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary. If Lender shall pay for any of the foregoing, Borrower shall promptly reimburse Lender therefore on demand together with interest thereon at the Default Rate.

18. **Additional Security, Right to Set-off.**  Lender may proceed against and/or enforce any of its rights with respect to the Collateral in whatever order it may, in its sole discretion, deem appropriate. Any amount(s) received by Lender from whatever source may be applied by Lender to any of the Obligations and may be applied in such order of application, as Lender shall from time to time, in its sole discretion, elect.  To the extent permitted by applicable law, Lender reserves a right of set-off in all of Borrower's accounts and deposit accounts with Lender (whether checking, savings, money market or some other account).  This includes all accounts and deposit accounts Borrower holds jointly with someone else and all accounts and deposit accounts Borrower may open in the future.  However, this does not include any IRA, Keogh accounts, or any trust account(s) whereupon set-off would be prohibited by law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or set-off all sums owing on the indebtedness against any and all such accounts and/or deposit accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and set-off rights provided in this paragraph.

19. **Assignment.** All covenants and agreements contained by or on behalf of Borrower or any Guarantor in this Agreement shall bind its successors and assigns or the heirs and personal representatives of any individual guarantor and shall inure to the benefit of Lender and its successors and assigns. Lender may sell or assign any and all right, title and interest it has under this Agreement and in the Collateral, in whole or in part. Borrower shall, upon the direction of Lender: (a) execute all documents necessary to effectuate such assignment, and (b) pay directly and promptly to Lender's assignee, without abatement, deduction, offset, set-off, defenses, claims, counterclaims, or causes of action, all amounts which have become due under the assigned agreements. Lender's assignee

Triumph LSA 1 601001 v02.00

Copyright 2015

shall have any and all rights, immunities and discretion of Lender hereunder and shall be entitled to exercise any remedies of Lender hereunder. All references herein to Lender shall include Lender's assignee (except that said assignee shall not be chargeable with any obligations or liabilities hereunder or in respect hereof). Borrower shall not assert against Lender's assignee any abatement, deduction, offset, defense, claim, counterclaim, causes of action or set-off which Borrower may assert it has against Lender. Borrower shall not assign or in any way dispose of all or any of its rights or obligations under this Agreement or enter into any agreement regarding all or any part of the Collateral without the prior written consent of Lender which may be withheld or denied, in its sole and absolute discretion, and any such purported assignment without the prior written consent of Lender by Borrower shall be null and void ab initio. In connection with the granting of such consent and the preparation of necessary documentation, a fee, determined by Lender in its sole and absolute discretion, shall be assessed. In the event that Lender has consented in writing, in its sole or absolute discretion, to any lease or license of the Collateral or any part thereof, Borrower hereby assigns and grants to Lender a security interest in any and all rights under any lease(s) or license(s), to secure all Obligations to Lender, and Borrower shall deliver to Lender the original of such lease(s).

20. **Entire Agreement**. THIS AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENTS AND EMBODIES THE FINAL AND ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PRIOR AGREEMENTS AND UNDERSTANDINGS RELATING TO THE SAME SUBJECT MATTER HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. Borrower acknowledges that no promises of any kind have been made by Lender or any third party to induce Borrower to execute this Agreement except to the extent expressly contained herein. Upon request, the parties will promptly execute and deliver such other and further documents and instruments, and shall do or take such other actions as may be reasonably required or appropriate, to cure any defects in the creation and issuance of this Agreement or in the perfection or preservation of the security interests contemplated herein.

21. **Amendment and Waiver**. No termination, waiver, amendment or modification of any of the terms or provisions of this Agreement or any obligation of Borrower to Lender shall be valid or binding unless set forth in a writing signed by a duly authorized officer of Lender, and then only to the extent specifically set forth therein. The waiver by Lender of any default hereunder or of any provisions hereof shall not discharge any party hereto from liability hereunder and such waiver shall be limited to the particular Event of Default and shall not operate as a waiver of any other or subsequent default.

22. **Attorneys' Fees; Expenses**. Borrower agrees to reimburse Lender on demand for the actual amount of all costs and expenses, including reasonable attorneys' fees, fees of auditors and accountants, and investigation expenses, UCC and tax lien searches, credit investigation fees, which Lender may incur in: (a) preparing, negotiating, closing, funding, amending, interpreting, administering and/or enforcing this Agreement and any documents prepared in connection herewith; (b) protecting, preserving or enforcing any lien, security interest or other right granted by Borrower to Lender or arising under applicable law, whether or not suit is brought; (c) in defense of Lender's interest or ownership rights in the Collateral including its priority; (d) in connection with any federal or state insolvency proceeding commenced by or against Borrower, or any subpoena or other legal process in any way relating to Borrower, including but not limited to those arising out of the automatic stay or seeking relief thereof, seeking dismissal or conversion of the bankruptcy proceeding or opposing confirmation of Borrower's plan thereunder. This provision shall survive termination of this Agreement. Notwithstanding the existence of any law, statute, rule or otherwise, in any jurisdiction which may provide Borrower with a right to attorneys' fees or costs, Borrower hereby waives any and all rights to seek such attorneys' fees or costs and Borrower agrees that Lender exclusively shall be entitled to indemnification and recovery of any and all reasonable attorneys' fees or costs in respect to any litigation based hereon, arising out of, or related hereto, whether under, or in connection with, this and/or any agreement executed in conjunction herewith, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of either party.

23. **Choice of Law; Venue and Jurisdiction**. INTENDING THAT EACH AND EVERY PROVISION OF THIS AGREEMENT BE FULLY EFFECTIVE AND ENFORCEABLE ACCORDING TO ITS TERMS, THE PARTIES AGREE THAT ANY CLAIM, CONTROVERSY, DISPUTE, THE VALIDITY, ENFORCEABILITY AND EFFECTIVENESS OF EACH PROVISION HEREOF AND THE OBLIGATIONS OF THE BORROWER, AND THE RIGHTS AND REMEDIES OF THE LENDER IN ANY WAY RELATED TO OR ARISING UNDER THIS AGREEMENT OR UNDER ONE OR MORE OBLIGATIONS OF BORROWER TO LENDER AND THE RELATIONSHIP OF THE PARTIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO THE CONFLICTS OF LAWS PRINCIPLES OR PROVISIONS THEREIN EXCEPT TO THE EXTENT THAT THE FEDERAL LAWS OF THE UNITED STATES OF AMERICA OTHERWISE PREEMPT TEXAS LAW, IN WHICH EVENT FEDERAL LAW SHALL CONTROL. BORROWER HEREBY IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE STATE OF TEXAS IN CONNECTION WITH ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THE AGREEMENT OR

Triumph LSA 1 601001 v02.00

Copyright 2015

THE OBLIGATIONS OR THE TRANSACTION CONTEMPLATED HEREBY. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Lender so elects, be instituted in any State or Federal Court sitting in Dallas County, Texas or, if none, any court sitting in the State of Texas (the "Acceptable Forums"). Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction and/or based upon venue or "forum non conveniens" in connection with any such action or proceeding. Should such proceeding be initiated in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum.

24. **Counterparts.** This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart by electronic transmission shall be effective as delivery of a manually executed counterpart, and any party delivering such an executed counterpart shall thereafter also promptly deliver a manually executed counterpart, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

25. **Notice.** All communications under or in connection with this Agreement (other than notices of public or private sale, which have notice provisions described in this Agreement) shall be in writing and personally delivered to an officer of the receiving party and/or shall be mailed by registered or certified mail, return receipt requested, postage prepaid, to the addresses of the parties listed in this Agreement or to such other addresses as each such party may in writing hereafter indicate in compliance with this Agreement. Any notice so addressed and mailed by registered or certified mail, return receipt requested, shall be deemed to be given to Borrower when so mailed and to Lender upon actual receipt by an authorized officer of Lender, and any notice so delivered in person shall be deemed to be given when actually received by, or receipt therefor is given by, an authorized officer of Borrower or Lender, as the case may be.

26. **DTPA Waiver.** Borrower acknowledges and agrees that Borrower has the knowledge and experience in financial and business matters to evaluate the merits and risks of the business transaction contemplated herein, is not in a disparate bargaining position relative to negotiating this Agreement and willingly waives and releases, without limitation, all rights and remedies associated with the Texas Deceptive Trade Practices Act ("DTPA") or such similar statute.

27. **Invalidity and Statute of Limitations.** In the event that any one or more of the provisions contained in this Agreement is/are in conflict with any statute, judicial decision or law and thus not valid or enforceable or is held, rendered or declared invalid, illegal or unenforceable in any respect by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision regarding the invalidity, illegality or unenforceability shall not affect, impair, invalidate or nullify the remainder of this Agreement or any other provision of this Agreement which shall remain in full force and effect. Borrower unconditionally and irrevocably stipulates and agrees that Borrower shall have no right to assert any claim, cause of action or counter claim, or to commence any action or proceeding against Lender as a result of, arising out of, or in any way related to the Agreement or the Collateral for the lesser of two years and one day after such claim, counter claim or cause of action shall accrue or any applicable statute of limitations. In no event shall the foregoing provision be read or interpreted to increase or lengthen any applicable statute of limitations.

28. **Survival of Agreements.** All representations and warranties of Borrower herein, and all covenants and agreements herein not fully performed before the effective date of this Agreement, shall survive such date.

29. **Renewal or Extension.** All provisions of this Agreement relating to the Obligations shall apply with equal force and effect to each, and to all documents and instruments hereinafter executed which in whole or in part represent a renewal, extension, increase, rewrite or rearrangement of any part of the Obligations. Any provision of this Agreement to be performed during the "term of this Agreement" "term hereof" or similar language, shall include any extension period. The loan documents exclusively represent the agreements between the parties and the intent of the parties thereto and supersede any prior proposal letters, commitment letters, oral covenants, oral agreements or negotiations.

30. **Cumulative Rights.** The rights and remedies of Lender under this Agreement shall be cumulative, and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any other right or remedy.

31. **Negotiation of Documents.** This Agreement has been negotiated by the parties at arm's length, each party represented by its own counsel, or waiving the right to be represented by counsel, and the fact that the documents have been prepared by Lender's counsel, after such negotiation, shall not be cause to construe any of such documents against Lender. Borrower acknowledges and agrees that this Agreement was deemed negotiated, approved, accepted and funded in Dallas, Texas. The Borrower has been advised and represents that it understands (i) that the Lender is a state savings bank in the State of Texas with its principal place of

Triumph LSA 1 601001 v02.00

Copyright 2015

business in Dallas County, TX, (ii) that Lender negotiated, documented, closed and funded this Agreement in Dallas County, TX, (iii) that the documents will be maintained and stored in Dallas County, TX.  The parties agree that any copy of this executed Agreement, including any photocopy, telecopy, electronic copy or facsimile thereof, shall have the same force and effect as though it were an original for all purposes, including but not limited to the enforcement of any of the terms and conditions thereof and the admissibility of such loan document in any legal or equitable proceeding.

32. **Debtor-Creditor Relationship**.  None of the terms of this Agreement or of any other document executed in conjunction herewith or related hereto shall be deemed to give Lender the rights or powers to exercise control over the business or affairs of Borrower. The relationship between Borrower and Lender created by this Agreement is only that of debtor/creditor.

33. **Indemnification**.  Borrower assumes liability for and agrees to defend, indemnify, protect, save and hold harmless Lender and its affiliates and their respective officers, directors, employees, agents, attorneys and advisors (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities, disbursements, costs and expenses, including, without limitation, reasonable attorneys' fees, court costs and expenses that may be incurred by or asserted or awarded against any Indemnified Party; i) arising out of or related to the Obligations, or the manufacture, financing, ownership, delivery, possession, use, operation, condition, or disposition of the Equipment by Borrower, including without limitation, any claim alleging latent and other defects, whether or not discoverable by Lender or Borrower and any other claim arising out of strict liability in tort, whether or not in either instance relating to an event occurring while Borrower remains obligated under this Agreement, and any claim for patent, trademark or copyright infringement, and/or ii) arising out of or related to any challenge to the nature or priority of Lender's security interest in/to the Collateral, except to the extent such claim, damage, loss, liability, cost or expenses is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this section applies, such indemnity shall be effective without prejudice to the survival of any other agreement of Borrower hereunder, and the agreements and obligations of Borrower contained in this section shall survive the payment in full of the indebtedness and all other amounts payable under this Agreement. To the maximum extent permitted by law, Borrower hereby knowingly, voluntarily and intentionally (and after each has consulted with its own attorney) irrevocably and unconditionally agrees that no claim may be made by Borrower against any Indemnified Party for any special, indirect, consequential or punitive damages in respect of any breach or wrongful conduct (whether the claim is based on contract, tort, common law or statute) arising out of, or related to, the transactions contemplated by this Agreement or any other Obligation or related documents, or any act, omission, or event occurring in connection herewith or therewith. In furtherance of the foregoing, Borrower hereby waives, releases and shall indemnify and hold harmless any and all Indemnified Parties from any such claims.

34. **Waiver of Trial by Jury**.  **EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY FROM OR RELATING TO THEIR RELATIONSHIP, ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION AND/OR COUNTERCLAIM (a) ARISING UNDER THIS AGREEMENT OR ANY OTHER OBLIGATION, INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER OBLIGATION, INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO. THE PARTIES ACKNOWLEDGE THAT A RIGHT TO A JURY IS A CONSTITUTIONAL RIGHT, THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL, AND THAT THIS JURY WAIVER HAS BEEN ENTERED INTO KNOWINGLY AND VOLUNTARILY BY ALL PARTIES TO THIS AGREEMENT.  IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, CAUSE OF ACTION AND/OR COUNTERCLAIM SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.**

35. **Reversal of Payments**.  Lender shall have the continuing and exclusive right to apply, reverse and re-apply any and all payments to any portion of the Obligations in a manner consistent with the terms of this Agreement. To the extent Borrower makes a payment or payments to Lender, or Lender receives any payment or proceeds of any collateral for Borrower's benefit, which payment(s) or proceed(s) or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then, to the extent of such payment or proceeds received, the Obligations or party thereof intended to be satisfied shall be revived and continued in full force and effect, as if such payment or proceeds had not been received by Lender.

Triumph LSA 1 601001 v02.00

Copyright 2015

36. **Injunctive Relief**. Borrower recognizes that, in the event Borrower fails to perform, observe or discharge any of its obligations or liabilities under this Agreement, any remedy at law may prove to be inadequate relief to Lender, therefore, Borrower agrees that if any default or Event of Default shall have occurred and be continuing, Lender shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages and without the posting of bond or other security in connection with such injunctive relief.

37. **Time of the Essence**.   Time is of the essence with respect to the payment and performance of Borrower's obligations under this Agreement and any other agreement between Borrower and Lender.

38. **Use of Headings**.   The headings used in each section of this Agreement are for ease of reference only.   Such headings are not intended to serve any descriptive, explanatory or other purpose and are of no legal or other significance whatsoever.   The terms "this Agreement," or "hereof," or "herein," or "hereunder," and any similar expressions refer to this Agreement and not to any particular paragraph or section or portion hereof.   Lender and Borrower shall collectively be referred to herein as the "parties," and each individually as a "party."

IN WITNESS WHEREOF, the parties have executed this Agreement on the Execution Date.

**LENDER:**

TBK BANK, SSB

By:

Name: _Teisy villatoro_

Title: _VP_

**BORROWER:**

**DAVID G. DOOLE,**
a **MISSISSIPPI SOLE PROPRIETOR**

By:

Name: ___DAVID G. DOOLE___

Title: ___SOLE PROPRIETOR___

**BORROWER:**

**FIBERLINK TECHNOLOGIES LLC,**
a **NORTH CAROLINA LIMITED LIABILITY COMPANY**

By:

Name: ___DAVID G. DOOLE___

Title: ___MEMBER___

Triumph LSA 1 601001 v02.00

Copyright 2015

## SCHEDULE "A"

This schedule is attached to and becomes part of that certain LOAN AND SECURITY AGREEMENT dated SEPTEMBER 12, 2019, (hereinafter referred to as the "Agreement") between the undersigned parties listed below, the Borrower and TBK BANK, SSB, as Lender

### DESCRIPTION OF PROPERTY

| Manufacturer | Model and Specifications | Serial Number |
|---|---|---|
| DITCH WITCH | JT40 HORIZONTAL DIRECTIONAL DRILL JET-TRAC WITH A DITCH WITCH FM13V MUD MIXER S/N:DWPFM13XVK0001029, WITH A TRIHAWK III WITH HOUSING, ROCK BIT ADAPTER, BEAR CLAW BIT, DIRT NOSE PIECE, HARDROCK HDD60 AIR HAMMER WITH BIT RETAINING RINGS AND A MINCON CONTROL STATION | DWPJT40XJH0000018 |

and any and all additions, attachments, accessories, substitutions, replacements, replacement parts, software and software upgrades, and all cash and non cash proceeds including without limitation, any rental proceeds, insurance proceeds, accounts, accounts receivable, chattel paper and electronic chattel paper arising out of or related to the use, sale, lease, rental or other disposition thereof. The Borrower hereby consents and agrees that all of the terms, provisions and obligations contained in the Agreement are in full force and effect and are hereby ratified and confirmed.

**LENDER:**

TBK BANK, SSB

By: _____

Name: _Jeisy villatoro_

Title: _VP_

**BORROWER:**

**DAVID G. DOOLE,**
**a MISSISSIPPI SOLE PROPRIETOR**

By: _____

Name: ____DAVID G. DOOLE____

Title: ____SOLE PROPRIETOR____

**BORROWER:**

**FIBERLINK TECHNOLOGIES LLC,**
**a NORTH CAROLINA LIMITED LIABILITY**
**COMPANY**

By: _____

Name: ____DAVID G. DOOLE____

Title: ____MEMBER____

150432817

File Number: 20151796768A
Date Filed: 10/23/2015 4:29:29 PM

C. Delbert Hosemann, Jr.
Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| **UCC Direct Services** | 800-331-3282 |

B. EMAIL CONTACT AT FILER (optional)
**efiling@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

> **CT Lien Solutions**
> **P.O. Box 29071**
> **Glendale, CA 91209-9071**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b) (use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1b blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| DOOLE | DAVID | G. | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 152 MOORE CROSSING SOUTH | BYHALIA | MS | 38611 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b) (use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2b blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| TBK Bank, SSB | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12700 Park Central Drive, Suite 1700 | Dallas | TX | 75251 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions, and accessories thereto, and all proceeds thereof. DITCH WITCH JT20 JET TRAC DIRECTIONAL DRILL CMWJT20XCE0000261 WITH TK TRACKER S/N 8372042 TD REMOTE DISPLAY S/N 8370605 TX BEACON S/N 8371678

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad item 17 and instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: |
|---|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien ☐ Non-UCC Filing |

| 7. ALTERNATIVE DESIGNATION (if applicable) | ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
MS-0-50872984-50643114

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1) (Rev 08/22)



160494891

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

File Number: 20162123419B
Date Filed: 11/10/2016 1:23:21 PM
C. Delbert Hosemann, Jr.
Secretary of State

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| **UCC Direct Services** | **800-331-3282** |

B. EMAIL CONTACT AT FILER (optional)
**efiling@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**CT Lien Solutions**
**P.O. Box 29071**
**Glendale, CA 91209-9071**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| **20151796746A** | (or recorded) in the REAL ESTATE RECORDS From attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item13 |

2. ☐ TERMINATION Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial) Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE

Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address Complete item 6a or 6b and item 7a or 7b and item 7c
☐ ADD name Complete item 7a or 7b and item 7c
☐ DELETE name Give record name to be referred in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete to Assignment or Party Information Change provide only one name (7a or 7b) (use exact full name or modify appreciate any part of the Debtors name

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ COLLATERAL CHANGE: Also check one of these four boxes ☐ ADD collateral ☑ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral

Release only the following: DITCH WITCH JT20 JET TRAC DIRECTIONAL DRILL CMWJT20XCE0000261

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b)(name of Assignor if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide the name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR **TBK Bank, SSB** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
**MS-0-56441273-52402785**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC3)(Rev 04/20/11)

150438784

File Number: 20151800030A
Date Filed: 10/29/2015 8:54:04 AM
C. Delbert Hosemann, Jr.
Secretary of State

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| **UCC Direct Services** | **800-331-3282** |

B. EMAIL CONTACT AT FILER (optional)
**efiling@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

    **CT Lien Solutions**
    **P.O. Box 29071**
    **Glendale, CA  91209-9071**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b) (use exact, full name, do not omit, modify or abbreviate any part of the Debtor's Name). If any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| DOOLE | DAVID | G. | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 152 MOORE CROSSING SOUTH | BYHALIA | MS | 38611 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b) (use exact, full name, do not omit, modify or abbreviate any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| TBK Bank, SSB | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12700 Park Central Drive, Suite 1700 | Dallas | TX | 75251 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions, and accessories thereto, and all proceeds thereof. DITCH WITCH FX30 MUD VAC s/n CMWFX30XHF0002638 2015 DITCH WITCH T18S TRAILER vin 1DSB202S8F1700798

| 5. Check only if applicable and check only one box. Collateral is | ☐ held in a Trust (see UCC1Ad item 17 and instructions) | ☐ being administered by a Decedent's Personal Representative | |
|---|---|---|---|
| 6a. Check only if applicable and check only one box. | | 6b. Check only if applicable and check only one box. | |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien ☐ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable) | ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer | ☐ Bailee/Bailor ☐ Licensee/Licensor | |

8. OPTIONAL FILER REFERENCE DATA
**MS-0-50933875-50663707**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1) (Rev 08/23/11)

160093799

File Number: 20161911614A
Date Filed: 3/10/2016 10:48:06 AM
C. Delbert Hosemann, Jr.
Secretary of State

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| **UCC Direct Services** | **800-331-3282** |

| B. EMAIL CONTACT AT FILER (optional) |
|---|
| efiling@wolterskluwer.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**CT Lien Solutions**
**P.O. Box 29071**
**Glendale, CA  91209-9071**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b) (use exact, full name, do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| DOOLE | DAVID | G. | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 152 MOORE CROSSING SOUTH | BYHALIA | MS | 38611 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b) (use exact, full name, do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | |
|---|---|---|---|
| TBK Bank, SSB | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 12700 Park Central Drive, Suite 1700 | Dallas | TX | 75251 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions, and accessories thereto, and all proceeds thereof. DITCH WITCH JT25 DIRECTIONAL DRILL CMWJT25XLE0000345 WITH TKD TRACKER S/N 8381530 TD REMOTE DISPLAY S/N 8380473 TX BEACON S/N 8381571 CMWJT25XLE0000345 DITCH WITCH FM13V MUD MIXER CMWFM13VEG0002990 ROUGHNECK AIR HAMMER 141220 2016 FELLING FT20I TRAILER 5FTEE2922G1003564 2013 FELLING FT30 TRAILER 5FTFE2628D1043524

| 5. Check only if applicable and check only one box. Collateral is | ☐ held in a Trust (see UCC1Ad item 17 and instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|---|

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

| 7. ALTERNATIVE DESIGNATION (if applicable) | ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
MS-0-52906757-51226305

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1) (Rev 08/23/11)

**1980443164**

File Number: 20193047381B
Date Filed: 9/24/2019 9:36:45 AM
C. Delbert Hosemann, Jr.
Secretary of State

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC Direct Services**                     800-331-3282

B. EMAIL CONTACT AT FILER (optional)
**uccfilingreturn@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐                                              ¬
    **Lien Solutions**
    **P.O. Box 29071**
    **Glendale, CA 91209-9071**
L                                              ⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER:
**20161911614A**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
From attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item13

2. ☐ TERMINATION Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial) Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE

Check one of these two boxes      AND Check one of these three boxes to
This Change affects ☐ Debtor ☐ Secured Party of record   ☐ CHANGE name and/or address Complete item 6a or 6b and item 7a or 7b and item 7c   ☐ ADD name Complete item 7a or 7b and item 7c   ☐ DELETE name Give record name to be referred in item 6a or 6b

6. CURRENT RECORD INFORMATION. Complete for Party information Change provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

7. CHANGED OR ADDED INFORMATION. Complete to Assignment or Party information Change provide only one name (7a or 7b) (use exact full name or modify appreciate any part of the Debtors name

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | |
|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ COLLATERAL CHANGE. Also check one of these four boxes  ☐ ADD collateral  ☑ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral

DITCH WITCH JT25 DIRECTIONAL DRILL CMWJT25XLE0000345 WITH TKD TRACKER S/N 8381530 TD REMOTE DISPLAY S/
8380473 TX BEACON S/N 8381571 CMWJT25XLE0000345 DITCH WITCH FM13V MUD MIXER CMWFM13VEG0002990
ROUGHNECK AIR HAMMER 141220 2016 FELLING FT20I TRAILER 5FTEE2922G1003564 2013 FELLING FT30 TRAILER
5FTFE2628D1043524

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b)(name of Assignor if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide the name of authorizing Debtor

| 9a. ORGANIZATION NAME | | | |
|---|---|---|---|
| **TBK Bank, SSB** | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA:
**MS-0-71795138-57802283**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC3)(Rev 04/20/11)

**210021597**

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

File Number: 20213462336B
Date Filed: 1/19/2021 5:07:06 PM
Michael Watson
Secretary of State

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC Direct Services**          800-331-3282

B. EMAIL CONTACT AT FILER (optional)
**uccfilingreturn@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**Lien Solutions**
**P.O. Box 29071**
**Glendale, CA  91209-9071**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**20161911614A**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
From attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial) Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment complete items 7 and 9 and also indicate affected collateral in item 8

4. ☑ CONTINUATION. Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE

Check one of these two boxes
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to
☐ CHANGE name and/or address Complete item 6a or 6b and item 7a or 7b and item 7c
☐ ADD name Complete item 7a or 7b and item 7c
☐ DELETE name Give record name to be referred in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete to Assignment or Party information Change provide only one name (7a or 7b) (use exact full name or modify appreciate any part of the Debtors name

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE. Also check one of these four boxes    ☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN
Indicate collateral collateral

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b)(name of Assignor if this is an Assignment)
If this is an Amendment authorized by a DEBTOR check here ☐ and provide the name of authorizing Debtor

| 9a. ORGANIZATION NAME | | | |
|---|---|---|---|
| **TBK Bank, SSB** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**MS-0-78601652-60551584**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC3)(Rev 04/20/11)

160364552

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

File Number: 20162054273A
Date Filed: 8/11/2016 3:16:46 PM
C. Delbert Hosemann, Jr.
Secretary of State

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC Direct Services**                          800-331-3282

B. EMAIL CONTACT AT FILER (optional)
**efiling@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**CT Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b) (use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| DOOLE | DAVID | G. | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 152 MOORE CROSSING SOUTH | BYHALIA | MS | 38611 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b) (use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| TBK Bank, SSB | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12700 Park Central Drive, Suite 1700 | Dallas | TX | 75251 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions, and accessories thereto, and all proceeds thereof. DITCH WITCH JT9 DIRECTIONAL DRILL S/N: CMWJT9XXEG0000244 WITH TKD TRACKER S /N 8384623 TD REMOTE DISPLAY S/N 8388905 17T1 BEACON S/N 8390761 DITCH WITCH FM5 MUD MIXER S/N: CMWFM5XXAG0002096

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box. | | | 6b. Check only if applicable and check only one box |
|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
**MS-0-55207400-51983587**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1)(Rev 08/23/11)

160455421

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

File Number: 20162102447A
Date Filed: 10/12/2016 8:34:16 AM
C. Delbert Hosemann, Jr.
Secretary of State

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| UCC Direct Services | 800-331-3282 |

B. EMAIL CONTACT AT FILER (optional)
efiling@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b) (use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| DOOLE | DAVID | G. | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 152 MOORE CROSSING SOUTH | BYHALIA | MS | 38611 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b) (use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| TBK Bank, SSB | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12700 Park Central Drive, Suite 1700 | Dallas | TX | 75251 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions, and accessories thereto, and all proceeds thereof. MCLAUGHLIN CS418B CORE SAW s/n:CS82416010 MOUNTED ON 2016 MCLAUGHLIN TRAILER VIN#: 4M9M1C116GG026010

| 5. Check only if applicable and check only one box. Collateral is ☐ held in a Trust (see UCC1Ad item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Check only if applicable and check only one box | 6b. Check only if applicable and check only one box |
|---|---|
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |

| 7. ALTERNATIVE DESIGNATION (if applicable) | ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |

8. OPTIONAL FILER REFERENCE DATA
MS-0-56033528-52264800

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1) (Rev 08/23/11)

1980443179

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

File Number: 20193047388B
Date Filed: 9/24/2019 9:40:19 AM
C. Delbert Hosemann, Jr.
Secretary of State

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC Direct Services**                    800-331-3282

B. EMAIL CONTACT AT FILER (optional)
**uccfilingreturn@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐ Lien Solutions
   P.O. Box 29071
   Glendale, CA 91209-9071 ⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| **20162102447A** | (or recorded) in the REAL ESTATE RECORDS From attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item13 |

2. ☐ TERMINATION Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial) Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9 For partial assignment complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE

Check one of these two boxes:      AND Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address Complete item 6a or 6b and item 7a or 7b and item 7c   ☐ ADD name Complete item 7a or 7b and item 7c   ☐ DELETE name Give record name to be referred in item 6a or 6b

6. CURRENT RECORD INFORMATION   Complete for Party Information Change provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION   Complete to Assignment or Party Information Change provide only one name (7a or 7b) (use exact full name or modify appreciate any part of the Debtors name

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ COLLATERAL CHANGE Also check one of these four boxes    ☐ ADD collateral    ☑ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN collateral
Indicate collateral

MCLAUGHLIN CS418B CORE SAW s/n:CS82416010 MOUNTED ON 2016 MCLAUGHLIN TRAILER VIN#: 4M9M1C116GG026010

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:   Provide only one name (9a or 9b)(name of Assignor if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide the name of authorizing Debtor

| 9a. ORGANIZATION NAME | | | |
|---|---|---|---|
| OR **TBK Bank, SSB** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**MS-0-71795226-57802311**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC3)(Rev 04/20/11)

**160468123**

File Number: 20162109049A
Date Filed: 10/19/2016 8:22:46 AM
C. Delbert Hosemann, Jr.
Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC Direct Services**                           **800-331-3282**

B. EMAIL CONTACT AT FILER (optional)
**efiling@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

┌
**CT Lien Solutions**
**P.O. Box 29071**
**Glendale, CA  91209-9071**
└

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| DOOLE | DAVID | G. | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 152 MOORE CROSSING SOUTH | BYHALIA | MS | 38611 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); If any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| TBK Bank, SSB | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12700 Park Central Drive, Suite 1700 | Dallas | TX | 75251 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions, and accessories thereto, and all proceeds thereof. DITCH WITCH JT25 DIRECTIONAL DRILL s/n:CMWJT25XHF0000381 WITH 1150' DRILL PIPE WITH TK TRACKER S/N 8372042 TD REMOTE DISPLAY S/N 8370605 TX BEACON S/N 8371678

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
**MS-0-56130177-52297221**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1)(Rev 08/23/11)

1980443190

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS

File Number: 20193047392B
Date Filed: 9/24/2019 9:43:32 AM
C. Delbert Hosemann, Jr.
Secretary of State

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC Direct Services**                    800-331-3282

B. EMAIL CONTACT AT FILER (optional)
**uccfilingreturn@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

┌
    **Lien Solutions**
    **P.O. Box 29071**
    **Glendale, CA 91209-9071**
└                                           ┘

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**20162109049A**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
From attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial) Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE**

Check one of these two boxes
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to
☐ CHANGE name and/or address. Complete item 6a or 6b and item 7a or 7b and item 7c
☐ ADD name Complete item 7a or 7b and item 7c
☐ DELETE name Give record name to be referred in item 6a or 6b

6. CURRENT RECORD INFORMATION. Complete for Party Information Change provide only one name (6a or 6b)

OR

6a. ORGANIZATION'S NAME

6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete to Assignment or Party Information Change provide only one name (7a or 7b) (use exact full name or modify appreciate any part of the Debtor's name

OR

7a. ORGANIZATION'S NAME

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

8. ☑ COLLATERAL CHANGE. Also check one of these four boxes:   ☐ ADD collateral   ☑ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral

DITCH WITCH JT25 DIRECTIONAL DRILL s/n:CMWJT25XHF0000381 WITH 1150' DRILL PIPE WITH TK TRACKER S/N 8372042 T REMOTE DISPLAY S/N 8370605 TX BEACON S/N 8371678

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b)(name of Assignor if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide the name of authorizing Debtor

9a. ORGANIZATION NAME
OR   **TBK Bank, SSB**

9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
**MS-0-71795280-57802349**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC3)(Rev 04/20/11)

160559352

**File Number: 20162156944A**
**Date Filed: 12/13/2016 4:40:21 PM**
C. Delbert Hosemann, Jr.
Secretary of State

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC Direct Services**            **800-331-3282**

B. EMAIL CONTACT AT FILER (optional)
**efiling@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**CT Lien Solutions**
**P.O. Box 29071**
**Glendale, CA  91209-9071**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b) (use exact, full name, do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| DOOLE | DAVID | G. | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 152 MOORE CROSSING SOUTH | BYHALIA | MS | 38611 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| TBK Bank, SSB | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12700 Park Central Drive, Suite 1700 | Dallas | TX | 75251 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions, and accessories thereto, and all proceeds thereof. CATERPILLAR 303.5E2 MINI EXCAVATOR JWY01961

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
**MS-0-56844845-52541186**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1) (Rev 08/23/11)

**1780588063**

File Number: 20172491919A

Date Filed: 12/29/2017 11:49:04 AM

C. Delbert Hosemann, Jr.

Secretary of State

### UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| UCC Direct Services | 800-331-3282 |

B. EMAIL CONTACT AT FILER (optional)
**efiling@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐       ¬

**CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071**

L       ⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| DOOLE | DAVID | G. | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 152 MOORE CROSSING SOUTH | BYHALIA | MS | 38611 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | |
|---|---|---|---|
| TBK BANK, SSB | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12700 Park Central Drive, Suite 1700 | Dallas | TX | 75251 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions, and accessories thereto, and all proceeds thereof. DITCH WITCH JT20 DIRECTIONAL DRILL S/N:DWPJT20XVH000108 DITCH WITCH FM5 MUD MIXING SYSTEM S/N:DWPFM5XXVH000280 DITCH WITCH SUBSITE TK RECON 2 TRACKER S/N:8420367 DITCH WITCH SUBSTITUTE TD RECON 2 DISPLAY S/N:8420268 DITCH WITCH SUBSTITUTE 17T1 BEACON S/N:8418277 2018 FELLING FT20I TRAILER 5FTCE272XJ2003985

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public Finance Transaction ☐ Manufactured Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
**MS-0-62121851-54462244**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1)(Rev 08/23/11)

**1980428910**

File Number: 20193039991A
Date Filed: 9/16/2019 4:47:33 PM
C. Delbert Hosemann, Jr.
Secretary of State

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**UCC Direct Services**                    800-331-3282

B. EMAIL CONTACT AT FILER (optional)
**uccfilingreturn@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐
    **Lien Solutions**
    **P.O. Box 29071**
    **Glendale, CA  91209-9071**
L

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b) (use exact, full name, do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | | |
|---|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| DOOLE | DAVID | | G. | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 152 MOORE CROSSING SOUTH | BYHALIA | MS | 38611 | | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | | |
|---|---|---|---|---|---|
| FIBERLINK TECHNOLOGIES LLC | | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 151 FLOWER HOUSE LOOP | TROUTMAN | NC | 28166 | | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | | |
|---|---|---|---|---|---|
| TBK BANK, SSB | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 12700 Park Central Drive, Suite 1700 | Dallas | TX | 75251 | | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions, and accessories thereto, and all proceeds thereof. DITCH WITCH JT40 HORIZONTAL DIRECTIONAL DRILL JET-TRAC S/N: DWPJT40XJH0000018 WITH A DITCH WITCH FM13V MUD MIXER S/N:DWPFM13XVK0001029, WITH A TRIHAWK III WITH HOUSING, ROCK BIT ADAPTER, BEAR CLAW BIT, DIRT NOSI PIECE, HARDROCK HDD60 AIR HAMMER WITH BIT RETAINING RINGS AND A MINCON CONTROL STATION

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
**MS-0-71686299-57761729**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1) (Rev 08/23/11)

File Number: 20050219410F
Date Filed: 11/01/2005 08:00 AM
Eric Clark
Secretary of State

000148835

## Mississippi - UCC3 FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Kelly Stuart

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

VANDERBILT MORTGAGE & FINANCE, INC.
PO BOX 9800
MARYVILLE, TX 37802

LOAN #446304

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 1336160 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☑ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| VANDERBILT MORTGAGE & FINANCE, INC. | | | |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | 7D. COUNTY # |
|---|---|---|---|---|
| PO BOX 9800 | MARYVILLE | TX | 37802 | |

| | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

1999 DESTINY OW69008AB THIS LIEN IS TO REMAIN IN EFFECT UNTIL TERMINATION

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OAKWOOD ACCEPTANCE CORP. | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — MISSISSIPPI UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 10/01)